# CHARLESTON.

## J. E. BAUGHMAN, ADMR. ETC. *v.* E. D. HOFFMAN.

Submitted February 21, 1922.    Decided February 28, 1922.

1. EVIDENCE—*In Suit to Enforce a Vendor's Lien Reserved in a Deed, Either Party May Prove the True Consideration.*

   In a suit to enforce a vendor's lien reserved in a deed for land either party thereto may prove against the other the true and actual consideration upon which the deed is founded, though a different consideration be expressed in the deed. (p. 394).

2. SAME—*In Action to Enforce Vendor's Lien, Parol Evidence is Admissible to Show Consideration Other Than Recited in Deed, or to Show Failure of Consideration.*

   In an action to enforce a vendor's lien to secure the payment of the consideration named in the deed, parol evidence is admissible to show that the consideration paid or promised is other than that recited in the deed; to explain the statement of consideration if ambiguous and uncertain; or to show that the real consideration for the subject matter of the deed has been paid; but it is not permissible to alter or contradict the legal import of the deed. (p. 394).

3. APPEAL AND ERROR—*Decree Based on Conflicting Evidence Not Disturbed.*

   A decree based on conflicting evidence, unless erroneous, will not be disturbed by the appellate court. (p. 396).

Appeal from Circuit Court, Braxton County.

Suit by J. E. Baughman, administrator of the estate of C. W. Bowen, deceased, against E. D. Hoffman. From a decree in favor of the defendant, the plaintiff appeals.

*Modified and affirmed.*

*Hall Bros.*, for appellant.
*Hines & Kelly*, and *Cary C. Hines*, for appellee.

LIVELY, JUDGE:

This suit is for the purpose of enforcing a vendor's lien retained in a deed to real estate. On the 6th day of August, 1918, by mutual deeds, C. W. Bowen and E. D. Hoffman exchanged real estate owned by them. Bowen conveyed to Hoffman 101 41/100 acres, consisting of 5 small adjoining tracts and lying on Little Buffalo Creek in Braxton County, reciting in the deed, ''in consideration of exchange of land this day conveyed to the first party (Bowen) by the second party and the further consideration of the sum of Twenty-six Hundred ($2600.00) Dollars four hundred ($400.00) dollars of which sum is in hand paid by the assignment of the R. E. Mick note by the said second party to the party of the first part, and for the residue of the balance of the deferred purchase money, aggregating twenty-two hundred ($2200.00) dollars party of the second part has this day executed to the party of the first part his five negotiable promissory notes,'' four of which were for $500.00 each payable in 1, 2, 3, and 4 years, and the other note for $200.00, payable in 5 years from date, all with interest. The deed from Hoffman to Bowen is ''in consideration of exchange of land this day made by the said first and second parties.'' In September, 1919, Bowen was killed and J. E. Baughman, the plaintiff, qualified as his administrator, and, finding three of the $500.00 notes and the $200.00 note described above in his decedent's possession, made payable to him, one note thereof being due, he instituted this suit to enforce the vendor's lien against the land on Little Buffalo Creek. Defendant denied that any of these notes were liens upon his

land; asserted that the consideration named in the deed from Bowen to him is not correctly stated; avers that the entire amount of the consideration was the sum of $2600.00, which includes the value of the land deeded to him, the growing and harvested crops thereon, a team of horses and harness, wagon, cow, hog and certain farming implements which were on the land when he bought it; that the lot of land which he deeded to Bowen, lying in the town of Gassaway, on which was a valuable dwelling house, was exchanged in part payment for the land and personal property deeded to him and that he was to have credit against the purchase price for $2,000.00, the agreed value of his house and lot in Gassaway; that at the time the deeds were exchanged he assigned to Bowen a note which was owing to him by R. E. Mick for the sum of $400.00 which was accepted by Bowen at face value and which was afterwards paid to him; that there then remained unpaid only $200.00 on the purchase price of the land which was represented by the $200.00 note. He avers that at the time these deeds were made there was a vendor's lien against the house and lot in favor of Mrs. Mae M. Woodley for about the sum of $200.00 and that it was at first understood between him and Bowen that he, Hoffman, would not convey this house and lot to him until the vendor's lien thereon was paid off and discharged, and that Bowen refused to accept a conveyance of that property until this lien was removed. He also avers in his answer that after both deeds were made Bowen was to hold these notes, which were then executed, until the purchase money lien against his lot was paid off and it was understood and agreed that when this lien was discharged, then the notes amounting to $2000.00 /(the four $500.00 notes) should be delivered to him; that the scrivener, one Van Wilson, who prepared the deed to the land, did not correctly state the consideration; that the $2600.00 mentioned therein as a part of the consideration was not in addition to the house and lot which was then to be deeded but that the $2000.00 for the house and lot was to be accounted for as above set out. It is over this statement of the consideration in the deed that this litigation arises. The administrator contends that the

true consideration to be paid by Hoffman for the land was $2600.00 plus the house and lot in the town of Gassaway. The defendant asserts that the $2600.00 should be credited with the value of his house and lot, to-wit: $2000.00, plus the $400.00 Mick note, leaving a balance of $200.00 on the purchase money price. The defendant also .claims in his answer that sometime after the date of the deeds he re-sold to plaintiff's intestate the team of horses and .wagon for the sum of $500.00, which overpaid all of the remaining purchase money by $300.00 and that the estate of Bowen owes him this sum and he asks for affirmative relief in his answer to the effect that the deed may be reformed and corrected so far as the consideration therein is stated; that the notes outstanding in the hands of the administrator, then amounting to $1700.00 be cancelled; that the lien therefor reserved in the deed be annulled and that he have a recovery against the estate for $300.00, which he claims is owing to him. It is further stated in the answer that at the time he re-sold the horses and wagon he then demanded all of the notes, having at that time paid off and discharged the balance of the purchase money owing by him to Mrs. Woodley on the house and lot in Gassaway. The reason which he asserts Bowen gave for not delivering to him all of the notes was that at that time he had all of the notes, except one of $500.00, pledged as collateral security for loans secured by him and could not then deliver them to him.

Upon this statement of the pleadings the parties went to proof and numerous depositions were taken.

The material evidence adduced by the plaintiff was to the effect that after the death of Bowen the defendant made inquiries of various persons, whose depositions were taken, as to what had become of the notes and stated that he had been cheated in the trade, and that Bowen had promised to make a reduction of the purchase price, or surrender to him something in the neighborhood of $1000.00 worth of notes. By this evidence it is claimed that defendant had acknowledged the debt after the death of Bowen. George Weese, the first witness, details a conversation that he had with Hoffman in front of Hoffman's house wherein he stated that he owed

Bowen $1700 but that he, Bowen, had not given any credit for his house and lot in Gassaway and "he told me to see Mr. Bowen and see if he would not knock off some of the $1700.00." All of the witnesses for both plaintiff and defendant, who knew the value of the respective properties exchanged, state that the land was worth from $1200.00 to $1800.00 and that the house and lot in Gassaway were worth about $2000.00. The assessed value of the house and lot was $750.00 and that of the land $955.00. There is no controversy about the sale of the personal property, crops and farming implements to Hoffman as a part consideration of the land, and the value thereof is variously estimated by the witnesses. Defendant denied the import of the conversations which he is alleged to have had with a number of plaintiff's witnesses in which he was claimed to have acknowledged liability on these notes and contended that in all of these conversations he had stated that these notes had been paid and that he had not received credit for the value of his house and lot. Other witnesses were introduced by defendant, who testify to hearing conversations between Hoffman and Bowen in which Hoffman was insisting that the notes be delivered to him and in which Bowen acknowledged that the notes had been paid. The most significant and controlling evidence is given by Jack Turner, who was an employee of Bowen, and N. Van Wilson, the attorney who drew the deeds. These two witnesses are the only ones who were present when the contract of exchange of properties was made. The defendant did not and could not testify as to the terms of the contract and the negotiations leading thereto, because his mouth was closed by the statute. Jack Turner states in substance that he was present with the contracting parties when they went out to the farm on Little Buffalo Creek, and when they made their trade and that after the farm and the personal property which entered into the trade were inspected by them Bowen asked Hoffman $2800.00 for the farm and personal property; that Hoffman offered to give as a purchase price $2400.00 and that they finally split the difference and agreed on a consideration of $2600.00; that it was agreed that the price of the house and lot was to be put in the trade at

$2000.00 as against the purchase price for the land and personalty. Van Wilson's testimony is to the effect that these two parties came to him on the morning of the day of the deeds and stated what their trade was to be but that Bowen desired to make the consideration for the farm as stated in the deed as large as possible because before that time he and some other members of his family, or relatives, had made affidavits to the effect that the farm was worth considerably more than the price for which he was selling, in order that his brother, L. E. Bowen, who was subject to military draft and who was on the farm working it as a farmer at that time, would be placed in a deferred classification and thereby escape immediate military service. He, Van Wilson, told the parties at that time that it was not good business to incorporate in the deed a consideration other than the true one but that Bowen replied with an oath that he knew what he was doing and that Hoffman understood the whole matter and they wanted it in that way and would have no trouble over it. He accordingly stated a fictitious consideration in the deed. He also testified that the price of the house and lot was to be $2000.00 and was to be credited against these notes, and when the lien against Hoffman's house and lot was paid off and released then Bowen was to deliver to Hoffman $2000.00 worth of these notes, then executed. The Bowen deed was prepared first and afterwards they came back to the office and had the Hoffman deed prepared. Hoffman states in his answer that Bowen did not desire to take a deed to the house and lot until the vendor's lien against it was discharged but afterwards, on the same day, stated that he had a chance to sell the house and lot and would do so and retain the purchase money notes for the land until the defendant could have the purchase money note due Mrs. Woodley settled and the lien released. It was shown that the vendor's lien on the lot was afterwards released and the release put to record. It is shown by Jack Turner that about a month after the trade was made Bowen repurchased the team of horses and wagon from Hoffman and he, Turner, at the direction of Bowen, went after the team and delivered the same with the wagon to Bowen, and that Bowen told him

he was to pay $500.00 therefor. This evidence substantiates the allegation of Hoffman that the $200.00 note was paid by the sale and delivery of this team of horses and wagon; but it is not shown whether the $300.00 balance was paid; and, as above stated, the defendant did not testify that this $300.00 was yet owing to him. It will be seen that Hoffman has paid for this land $2000.00 as represented by his house and lot; $400.00 represented by the Mick note; and $500.00 for the personal estate resold to Bowen, making $300.00 more than the purchase price agreed to be paid for the land.

We think the evidence preponderates in favor of the defendant to the effect that these notes have been paid, and consequently they are not liens upon the land. The circuit court so found, but, it not being clear that the claim of $300.00 due the defendant for overpayment had been established, the circuit court refused to allow that sum as affirmative relief asked for in the cross-bill answer. Corroborating the allegation of the answer is the evidence of Fisher, cashier of the bank, to the effect that three of the $500.00 notes were in his possession at various times, the last time within 30 days before the death of Bowen, as collateral security for a debt owing by Bowen to the bank. It is also proven that the $200.00 note had been traded by Bowen to M. B. Sears with the understanding that Bowen should have it back at any time he desired and that it was, in pursuance of that agreement repurchased or "redeemed" by Bowen.

The legal principle involved, the application of which disposes of all the assigned errors, is whether defendant's evidence is admissible to contradict or explain the consideration named in his deed. It will be observed that his deed says that the consideration is the exchange of land and the further consideration of $2600. Can this stated consideration be denied, explained or rebutted? Did defendant agree to pay $4600.00 or $2600.00 less the agreed value of his house and lot exchanged? It is not clear from the deed that the consideration is $2600.00 plus the value of the house and lot. The exchange of property is one of the items of consideration, but it does not follow that the value of the house and

lot as agreed upon should be added.  The inducement to sell the farm at $2600.00 may have been brought about by the advantageous price agreed upon for the house and lot exchanged.  The language used is susceptible of different constructions.  It is susceptible of explanation.  Although formerly a different rule prevailed in some of the states (New York, North Carolina and Louisiana) it is now well settled that the consideration named in a deed may be explained or rebutted by parol evidence where the amount thereof is in controversy.  10 R. C. L. p. 1043, sec. 237, and cases cited from practically all of the states.  It has always been the well established rule in Virginia.  2 Minor on Real Prop. sec. 1158; *Harvey* v. *Alexander,* 1 Randolph 219. Where a vendor sues to recover the purchase price, or the vendee sues to recover it back, it is generally held that parol evidence is admissible to show that the actual consideration paid or promised is different from that recited in the deed; but it is not admissible to alter or contradict the legal import of the deed.  Browne on Parol Ev., sec. 92; 4 Wigmore on Ev., sec. 2443.  It may be shown that the price of the land was less than the consideration expressed in the deed, as in *Bowen* v. *Bell,* 20 Johns. 338; or that it was more, as in *Belden* v. *Seymour,* 8 Conn. 304.  ''The entire weight of authority tends to show that the acknowledgment of payment in a deed is open to unlimited explanation in every direction.''  *Goodspeed* v. *Fuller,* 46 Me. 141.  The legal import of the deed cannot be questioned.  The recited consideration cannot be attacked for the purpose of showing that the deed was not founded on valuable consideration, and so defeat the deed; nor for the purpose of raising a resulting trust in favor of the grantor.  Although it is always competent to contradict the recital in a deed as to the amount paid, in an action involving recovery of the purchase money, or as to the measure of damages in an action upon the covenants in a deed, yet it is not competent to contradict the acknowledgment of a consideration paid as thus affecting the validity of the instrument, and the title to the property granted.  ''The cases uniformly hold that, although a deed acknowledges the receipt of a con-

sideration, parol evidence is admissible to show that it has not, in fact, been received, if the purpose of the party seeking to introduce the evidence is not to invalidate the deed as a conveyance.'' *Rude* v. *Levy*, 43 Colo. 482, and note in 25 L. R. A. (N. S.) 1197. Our cases are in accord with the decisions announcing these principles. See *Wilfong* v. *Johnson*, 41 W. Va. 283; *Rymer* v. *So. Penn Oil Co.*, 54 W. Va. 537; *Tie & Lumber Co.* v. *Flannigan*, 77 W. Va. pp. 169 and 170. We think the evidence here taken as to the true consideration was clearly admissible and was not for the purpose of questioning and did not affect the validity of the deed. It was admissible to clear the uncertain meaning of the clause embodying the statement of consideration. It was further admissible to sustain the allegations of the answer averring that the notes sued on had been paid, and the lien reserved for their payment discharged. It will be observed from Van Wilson's evidence that the deed from Bowen to Hoffman and the notes thereunder were first executed, and afterwards the parties came back to his office and the deed for the house and lot was prepared and signed with the understanding that when the lien on the house and lot was paid by Hoffman, then Bowen would surrender the notes described in the first deed, amounting to $2,000.00.

The evidence as to the declarations of the parties after the conveyances were made is contradictory; but the evidence of the contract and the consideration moving the parties thereto is reasonably conclusive. Moreover, it is well settled by our decisions that where the evidence in a chancery cause is conflicting, doubtful and unsatisfactory, the finding of the lower court thereon will not be disturbed, even though the appellate court might have made a different finding had it decided the cause in the first instance. *Ross* v. *McConnaughy*, 85 W. Va. 199; 1 Michie Ency. Dig. 620, and cases cited.

Cancellation of the notes sued on, a release of the lien therefor upon his land, and a decree over against the administrator for $300.00, the amount over paid on the notes by the resale of the horses and wagon to Bowen, are asked as affirmative relief by defendant. As before stated, it is not

clearly shown that the $300.00 has not been paid. It is clearly shown that the horses and wagon were resold at the price of $500.00, thus overpaying the note of $200.00, but whether the excess remains unpaid is not clearly substantiated, and hence the refusal of the lower court to grant that relief was justified. No cross-error is assigned for that reason. However, it is reasonably clear that the administrator now has in his possession the notes sued on, amounting to $1700.00, and, as some of them are not due and are negotiable, defendant is entitled to have a decree cancelling them, or ordering them to be delivered to him. The decree will be affirmed with this modification, that said notes be cancelled or delivered to defendant, and that the vendor's lien upon the land securing payment of the same be discharged. In all other respects the decree is affirmed. The cause will be remanded for modification of the decree as above set out.

*Modified and affirmed.*