# CHARLESTON.

LOGAN WALTON, *Admr. et als, v.* W. C. PRITT.

Submitted March 13, 1923.　Decided March 20, 1923.

1. TRUSTS—*Presumption That Property Held in Trust for Purchaser, When Paid For by One and Bid in by Another.*

   Where real estate is sold at a judicial sale and bid in by one, the entire purchase price being paid by another who demands the deed therefor, and afterwards the person who bid in the property and to whom the sale was confirmed takes title thereto, the presumption arises that the title is held in trust for the party who paid the purchase price. This presumption may be rebutted by facts and circumstances which negative it. (p. 378).

2. SAME—*Burden on Bidder to Rebut Presumption of Resulting Trust in Favor of One Furnishing Purchase Price.*

   Where it clearly appears that a son-in-law, who knowing that his father-in-law had paid the purchase price for land and requested a deed therefor at the time of payment, afterwards procures the deed to be made to himself, the burden is upon the latter, in a suit to extract the title from him, to show that the money so paid was a gift or loan. The burden is upon him to rebut the presumption of a resulting trust in favor of the father-in-law. (p. 378).

3. SAME—*Acton to Obtain Title by One Furnishing Purchase Price of Lands Against Bidder, Who Took Possession and Made Improvements, Brought Within Four Years Thereafter, Held Not Barred by Laches.*

   An impecunious son-in-law bids in property at a judicial sale under the direction of the father-in-law, who pays all of the purchase price to the commissioner and requests a deed therefor. The son-in-law afterwards obtains title from the commissioner, and moves upon the land, erects a small store room thereon which is occupied by himself and father-in-law as partners in a mercantile business, the father-in-law furnishing the funds therefor. A small house and barn are constructed by the son-in-law from timber cut on the land and by moneys derived from the joint mercantile business which becomes insolvent. He also sinks a well at a cost of about $50. Shortly after the deed is made the father-in-law demands from him a transfer of the title, which is refused, and no action to obtain the title is instituted by the father-

in-law until four years afterwards. The action is not barred by laches. (p. 381).

4. APPEAL AND ERROR—*Decree on Conflicting Evidence Not Disturbed, Unless Clearly Erroneous.*

A decree based on conflicting evidence, unless clearly erroneous, will not be disturbed by the appelate court. (p. 380).

Appeal from Circuit Court Pocahontas County.

Suit by Logan Walton, administrator, and others, against W. C. Pritt. From a decree for plaintiffs, defendant appeals.

*Affirmed.*

*N. C. McNeil* and *L. M. McClintic,* for appellant. appellant.

*H. S. Rucker* and *F. R. Hill,* for appellees.

LIVELY, JUDGE:

The decree complained of in this appeal extracts from defendant, appellant here, the title to 26 acres and 20 poles of land in favor of Edna Sparks, devisee of J. H. Walton, deceased, the original plaintiff; gives credit to defendant for certain improvements placed upon the land in controversy; decrees against him the costs of the litigation.

The original plaintiff, J. H. Walton, who died pending the litigation, resided in Greenbrier county, and defendant, W. C. Pritt, married his eldest daughter, Switzerland, and resided on the farm of his father-in-law. The land in controversy, containing 26 acres and 20 poles and lying on Droop Mountain in Pocahontas county, had been decreed to sale by the circuit court of Pocahontas county, and Pritt expressed a desire to purchase the same, but having no money took the matter up with Walton who directed him to bid the land in at a stated price. Pritt attended the sale and the bidding exceeded the price which he was authorized to pay, but being unable to get into communication with Walton over the 'phone while the sale was going on he took the risk of exceeding the amount he was authorized to pay and bid the property in at the price of $306.50, informing Commissioner McNeel, who

made the sale, that Walton would pay the purchase price therefor. Later, Walton paid direct to the commissioner $77.54, the cash payment, and executed a note for the deferred payment, $228.96, signing also, under request of the commissioner, Pritt's name to the note. The sale was confirmed to Pritt. Afterwards when the note became due, notification of its due date was sent to Pritt and Walton, and the latter forwarded his check to the commissioner on February 26, 1912, for $235.83 and directed the commissioner to make the deed to him as he had paid all of the purchase money. The commissioner notified Pritt that the purchase money had been paid by Walton, and a deed requested therefor; but afterwards Pritt obtained the deed from the commissioner, saying that he had no understanding with Walton by which the deed should be made to the latter. As soon as Walton ascertained that the deed had been made to Pritt he demanded of Pritt a conveyance of the property, which was refused. It appears from the evidence that it was the intention of Walton to take the title to the land, and afterwards convey or give the same to his daughter, Switzerland; but that he did not intend that defendant Pritt should have the title thereto, for prudential reasons based on the unfrugal habits and lack of business abiliy of the son-in-law. The son-in-law had been addicted to the use of intoxicants, and had been unable to accumulate or hold any of his earnings. However, Pritt moved upon the land, together with some of his relatives, about the beginning of the year 1912, and began to make some improvements thereon. There was a log dwelling house on the land, but he afterwards constructed a cheap frame dwelling thereon largely from timber cut off of the land, and he erected also a small log barn instead of a log barn which was there at the time of the purchase. It seems that about this time Walton and Pritt conceived the idea of selling merchandise, and a small storehouse was erected on the premises by Pritt from lumber obtained from the farm, possibly some of it from an adjoining tract owned by Walton, and they placed a small stock of goods therein; the business being conducted as J. H. Walton & Co., Walton being the responsible partner and Pritt conducting the business. Pritt also sunk a well on the property at the cost of about $50. On Decem-

ber 29, 1914, Pritt and his wife conveyed a small lot, a part of the land, to the board of education, for a school house, for which Pritt was paid $100, a fact known to Walton, and to which he seems to have made no objection. At March rules, 1916, this suit was instituted by Walton to extract the title to the land from Pritt, alleging in the bill that the land belonged to him, he having paid the purchase price therefor and that Pritt held the same for his benefit as trustee. Pritt answered the bill, claiming that the money paid by Walton for the land was in the nature of a loan, and that there was no understanding that the title should be vested in Walton; that he having moved upon the land and made valuable improvements thereon with the knowledge of Walton and without objection on his part and having sold a portion thereof for a school house lot without objection from Walton, plaintiff was estopped by laches from denying his title thereto.

On this issue the parties went to proof, and numerous depositions were taken. That Walton furnished the purchase price and paid it direct to the commissioner and executed the bond, signing Pritt's name thereto as well as his own, and that he requested a deed therefor when he paid the balance of the purchase price on February 26, 1912, is not denied or attempted to be denied. This fact would create the presumption that it was the intention of the parties that the one who paid the purchase price should receive the benefit thereof. It would be presumed that a resulting trust followed in favor of Walton and that the legal title to the land afterwards obtained by Pritt, was held by him as trustee for the benefit of Walton. It is well settled that where one party pays all the purchase money for land, and title is taken in the name of another, a constructive trust, called a resulting trust, arises in favor of the party who paid the price. *Currence* v. *Ward*, 43 W. Va. 367. This presumption may be rebutted by showing that the money paid was intended to be a gift to the party who took the title, or that it was a loan. The conduct of the parties and the facts and circumstances surrounding them may be viewed and considered to rebut this presumption. The burden is upon the party who asserts that it was a gift or loan or that there was an agreement that the title should be held not as a trust. 1 Perry on Trusts, sec. 139. There

is a sharp difference between Walton and Pritt as to whether
or not the money paid for the land by Walton was a loan to
Pritt. Walton's evidence is to the effect that he sent Pritt
to the court house to buy this land for him, intending at some
future time to transfer the land either by deed or will to his
daughter, Pritt's wife. Pritt and his wife both say, that
Walton was to buy the land, furnish the money therefor, and
Pritt was to repay it at some future time. The circum-
stances are against this contention of defendant. The time
when the money was to be repaid was not stated. It is
indefinite and uncertain. No note or memorandum thereof
was made. At that time Pritt was penniless, making his
home on the land of Walton, his habits were not exemplary,
and his lack of business ability was well known to Walton.
The fact is undisputed, that at the time Walton paid the pur-
chase price he requested in writing, which writing is in the
record, that the deed be made to him. · This fact is rather
conclusive of the intention of Walton at the time the money
was paid, and negatives the contention that it was a loan.
It is further in evidence and undisputed by Pritt that as soon
as Walton ascertained that the deed had been made he
promptly came and demanded a transfer of the title. Pritt
and his wife say that upon Pritt's refusal to make over the
title then Walton demanded that his money be repaid, which
they claim was evidence that it was intended as a loan. There
is evidence that after this transaction had been made, of state-
ments of Walton to the effect that he had furnished the money
for the purchase of the land and that he had loaned the same
to Pritt. These statements are denied. On the other hand,
there is an abundance of evidence that during these transac-
tions Walton claimed the title to the land and had frequently
expressed his intention to at some future date transfer the
title to his daughter. There is also evidence that Pritt be-
came involved in a law suit over an automobile and at that
time made declarations to the effect that if the plaintiff in
the automobile suit obtained judgment against him it could
not be collected because the land belonged to his father-in-
law, and he, Pritt, had no beneficial interest in it. There is
other evidence to the effect that Pritt stated on various occa-
sions that while he had nothing in the land he held the legal

title thereto, and although Walton wanted him to transfer the property to him so that he could then deed it to his daughter, he would not do so, and that Walton could not get the title without going to law, and that he didn't think that his father-in-law would ever do that; and that if anything should happen to "old Henry" (his father-in-law), he had the business in such shape that he would get the "whole works." The evidence is conflicting as to whether or not the money paid was in the nature of a loan, but the circuit court has weighed this conflicting evidence and come to the conclusion that Pritt had not successfully carried the burden of proof. We are also of the same opinion. Moreover, where there is a finding of fact upon conflicting evidence and a decree is based thereon, the appellate court will not disturb that finding unless it is clearly erroneous. *Baughman* v. *Hoffman,* 90 W. Va. 388; 1 Michie Ency. Dig. 620. Counsel for Pritt contend that the circumstances of this transaction would force the conclusion that Walton furnished the money as an advancement or gift to his son-in-law, standing in the relation of *loco parentis* to Pritt; under the authority of *Elliott* v. *Harris,* 45 W. Va. 245. This is totally at variance with the claim strenuously advanced that the money was loaned. The two defenses are inconsistent. In the last cited case the party who paid the money directed the deed to be made, and it was clearly shown that it was intended as an advancement. The record in the case under consideration completely negatives any intention on the part of either Pritt or Walton to consider the money as an advancement. Pritt was not a prospective heir, and could not receive an advancement.

The fact that Walton permitted Pritt to take possession of the land and make improvements thereon and sell a small lot therefrom to the board of education is relied upon as inconsistent with the claim of Walton to the beneficial interest in the land, and is a circumstance which negatives the presumption of a resulting trust. We can see nothing inconsistent therein with his claim. The trust having been created and the vigorous assertion of his right to the land at the time the deed was made, the fact that he permitted his daughter and her husband to move upon the land and make improvements thereon for their comfort and convenience while there,

is not inconsistent with his claim of title. Moreover, it appears that he was conducting a business on the property and was in possession thereof to that extent; that he exercised ownership over the land; that the lumber for the improvements made came from the land itself and that the payment for the work was largely from funds derived from the mercantile business. There is much evidence to show that the value of the improvements made was not much in excess of the value of the buildings which were destroyed or removed. However, the court has found, through its master commissioner, that the improvements amounted to $800, and for which Pritt was given due credit. The value of his improvements was not taken from him. Walton made no objection to the transfer of title to the board of education, giving as a reason therefor that a school house would be erected thereon near the land, through which his grandchildren could obtain elementary education. The nearness of educatioal facilities would tend to enhance the value of the property. It is true that the money paid therefor went to Pritt, but Walton made no objection to that because it was used in the mercantile business. to relieve him of that much of the indebtedness against the same for which he, Walton, was alone the responsible party.

Is the plaintiff barred by laches in not instituting suit promptly to extract the title from Pritt? The delay in doing so extends over a period of about four years. The defense of laches implies injury to the person pleading it, brought about by loss of evidence, death of some of the parties to the original transaction, changed situation, or the intervention of the rights of some other persons. *Cramer* v. *McSwords*, 24 W. Va. 594. Lapse of time usually does not constitute laches unless it be accompanied by some injury or disadvantage to the party pleading it, or unless accompanied by conduct indicating abandonment of the claim, the re-assertion of which will enure to the benefit of the claimant by reason of changed conditions. *Mitchell* v. *Cornell*, 88 W. Va. 194. The four years time in which plaintiff delayed in bring-in his suit is not at all unreasonable under the circumstances nor can we see any disadvantage to Pritt by loss of evidence, or changed conditions occasioned by the delay. All the wit-

nesses to the transaction were living and none of the documentary evidence was lost. He has lost nothing by reason of his improvements; on the contrary, the commissioner and the lower court has awarded him possibly more for them than was justified by the evidence. The lapse of time has not impaired his defense in any particular. The parties were closely related, and the courts show the utmost leniency for laches and lapse of time where intimate personal or family relationship exists between the parties. 10 R. C. L. p. 402; *Jameson* v. *Rixie,* 94 Va. 342. The lapse of four years time would not make a claim of this character stale. It was within the limitation of time for the assertion of an ordinary account between individuals. Clearly the defense of laches under the circumstances of this case is unavailing to the defendant.

The decree will be affirmed.

*Affirmed.*