ANGELINE HARDIN *v.* ASHVILLE H. COLLINS *et al.*

(No. 9297)

Submitted October 20, 1942.   Decided November 24, 1942.

*G. G. Duff, W. G. Brown* and *C. A. Duffield, Jr.,* for appellants.

*O. C. Lewis* and *R. A. Clapperton,* for appellee.

ROSE, JUDGE:

An appeal was granted Ashville H. Collins, Ertha Collins and their five infant children from a decree of the Circuit Court of Nicholas County in a chancery cause in which they were defendants and Angeline Hardin was plaintiff, by which a deed from the plaintiff to Ertha Collins and said five children was cancelled and set aside.

The bill of complaint charges that Angeline Hardin was the owner of a tract of 177½ acres of land, worth two thousand dollars, situate on Mill Creek in Hamilton District, Nicholas County, which she had inherited from her mother, Jane Collins, to whom it had been conveyed by E. M. Bays and Emet Robertson by deed dated October 25, 1915. It is charged that, by fraud and misrepresentations, Ashville H. Collins and Ertha Collins, his wife, induced the plaintiff to execute a deed under date of November 2, 1933, conveying this parcel of land to Ertha Collins and the five infant children of herself and Ashville H. Collins; that she at the time was incompetent to transact business; that she received no consideration for the execution of this deed; that the plaintiff, at the time of the execution of the deed, resided in Mingo County, at a distance of about two hundred miles from the land in question which she then had never seen; that the Collinses came to the home of the plaintiff two or three days before the deed was executed under the pretense of pay-

ing a social visit, Ashville H. Collins being her cousin, bringing with them the deed in question prepared for execution; that a short time before their departure, the deed was presented to her for execution; that she was led to believe, and did believe, that it was merely a paper of some character which would enable Ashville H. Collins to borrow two hundred dollars with which to pay the plaintiff that amount owed by his father, Hiram Collins, deceased, to Jane Collins, her mother, in their lifetime, and for which he was giving plaintiff two notes of one hundred dollars each, signed by himself and wife; that at the time the deed was signed, she was "ill, bed-ridden and enfeebled both in mind and body, she at that time was taking strychnine and other medicine and narcotics under the direction of a practicing physician, and had been in such condition for a considerable time prior thereto", and "that at the time she so signed and acknowledged the said paper she did not know, and was not in physical or mental condition to know or understand, that she was signing and acknowledging a deed of conveyance * * *"; that the defendants have occupied the land in question since the date of the deed without rent, and have removed timber to the value of one thousand dollars; and have covered the same with a deed of trust to secure the Resettlement Administration of the United States in the sum of two hundred dollars, which is unpaid. The bill prays for the cancellation of the deed of November 2, 1933, subject to the said mortgage, if that be deemed proper, and a decretal judgment for the value of the timber removed and the rent claimed.

The infant defendants answered formally by guardian ad litem. Ashville H. Collins and Ertha Collins filed a combination demurrer and answer in which the names of the infants are inserted as respondents. No grounds are assigned in support of the demurrer. This answer asserts that neither Jane Collins nor plaintiff ever owned, or were entitled to, any interest in said land except the mere legal title thereto, and that the same was actually purchased from said Bays and Robertson by Hiram Collins, the father of Ashville H. Collins, and a brother of Jane,

and paid for from Hiram's own funds; that Hiram Collins had the title placed in his sister's name because of financial difficulties in which he then was, with the understanding that he should use the land as his own, and that she would convey the legal title thereto as he might thereafter direct. It is further alleged that after the death of Jane Collins, Hiram Collins procured the plaintiff to execute a deed, not recorded, for this land dated September 11, 1924, conveying the same to Arminta Facemire, a daughter of Hiram Collins, and her husband, Ernest Facemire, for the consideration of fifteen hundred dollars, of which seven hundred fifty dollars was to be paid in the form of support and maintenance of Hiram Collins for the rest of his life, and the residue was to be paid in three installments of two hundred and fifty dollars each to Hiram Collins in six, twelve and eighteen months, respectively, for which, notes were executed and signed by Ernest Facemire. The Facemires, it is alleged, after two years, transferred their right under this deed to Ashville H. Collins for two hundred dollars, and delivered to him the Hardin deed of September 11, 1924, but executed no deed or other writing transferring the same; whereupon, it is alleged, the notes of the Facemires given to Hiram Collins were surrendered by him to them. The answer alleges further that this transaction was fully known to the plaintiff, and that the deed of November 2, 1933, was made merely to perfect legal title in the grantees therein, for which the two notes of one hundred dollars each are the true consideration. The respondents also deny that the plaintiff was incompetent or that any fraud or misrepresentation was made to her or undue influence exercised upon her, to induce the making of said deed. The rent and timber claims are, of course, resisted.

To this answer, the plaintiff filed a replication charging that the purported deed of September 11, 1924, was a forgery.

The evidence shows that the negotiations for the purchase of this land from Bays and Robertson were conducted wholly by Hiram Collins, and that the deed was made to Jane Collins at his direction. Bays testified that

the purchase money, both the cash payment and those deferred, were made to him by Hiram Collins, but that he knows nothing as to whose money was used, except that he understood that at least part of the deferred payments came from timber sold from the land. But it clearly appears that Hiram Collins, at the time of this purchase, was in serious trouble, financially and otherwise, while at about the same time Jane Collins had sold certain coal or timber land from which she should have had ample funds for the purchase; and there is substantial evidence tending to show that Hiram Collins had gotten nine hundred and fifty dollars from his sister Jane near this date. Ashville H. Collins testifies that his father paid the consideration, but, while admitting his father's impecunious condition, contends that the consideration actually consisted principally of money which Bays owed Hiram Collins, a matter not mentioned by Bays. In a letter from Hiram Collins to Jane, written after the deed, he states: "I think I can get up all I have to raize now but I may want you to help me before long on my land or your land *reatherly* here times is *geting beter* I think we can sell all the timber or *loggs* that we have." On this evidence, the trial chancellor, by the final decree in the case, adjudged, ordered and decreed that the deed from Bays and Robertson to Jane Collins "was a valid deed to the said Jane Collins, and that said conveyance was not in trust or for the benefit of Hiram Collins, as contended by said defendants, Ashville H. Collins et al., but that full title to said tract of land was by said deed vested in the said Jane Collins and was later inherited by the said Angeline Hardin." On this question of fact, determined from conflicting evidence, we cannot overrule the trial chancellor.

The original of the deed of September 11, 1924, is before us. It is at once apparent that the whole of the instrument, including the signatures, is in one handwriting. A number of qualified witnesses testify to this effect, and further state that the handwriting is that of Hiram Collins. Against this testimony, there is no evidence whatever. The final decree adjudged that this deed is "a forgery and fraud, and that said writing or purported deed,

was not signed, acknowledged or executed by the said Angeline Hardin and Harvey Hardin, and ought to be cancelled and rescinded. It is, therefore, adjudged, ordered and decreed that the said writing bearing date and described as aforesaid, be and the same is hereby cancelled and rescinded and held for naught, and to have no more force or effect than if the same had never been written." The trial chancellor could have arrived at no other conclusion. These two claims to the land, therefore, are out of the case, except so far as they may constitute a part of the background to the transactions resulting in the deed of November 2, 1933.

Finally, as regards the deed in controversy, some conclusions are inevitable. The consideration for its execution was either one dollar, or the two unsecured notes for one hundred dollars each, which for nine years the makers have refused to pay, and which probably have always been uncollectible. The land is shown to be worth at least two thousand dollars. The consideration, therefore, is grossly inadequate. This, if not evidence of fraud, is at least a substantial circumstance to be considered when fraud is charged. *O'Dell* v. *Lawrence,* 91 W. Va. 96, 112 S. E. 297; *Black* v. *Post,* 67 W. Va. 253, 67 S. E. 1072; *Hale* v. *Hale,* 62 W. Va. 609, 59 S. E. 1056, 14 L. R. A. (N. S.) 221; *Pennybacker* v. *Laidley,* 33 W. Va. 624, 11 S. E. 39; *Deem* v. *Phillips,* 5 W. Va. 168.

Next, there is no question but that the plaintiff at the time the deed was made was feeble in mind and in body. She was sixty-four years of age, was grief-stricken from the death of two sons within the last six months, and she says she was racked from pain on account of rheumatism, neuralgia and stomach trouble. She was habitually taking pills containing strychnine and codeine. She had long been bedfast, and Ashville H. Collins says that she sat up in bed for part of the time while he was in her home. The plaintiff says that her mental and physical conditions were about the same as when she gave her deposition, and in both direct and cross-examination, we perceive that she is not at all clear, but easily becomes irritable and incoherent when confused. Only with difficulty could she

read and comprehend a note exhibited to her. The notary who certified her acknowledgment of the deed in question says she was incompetent. The Collinses and E. M. Bays testify to the contrary. She was not insane, and she was not an imbecile. On the whole, the evidence exhibits the plaintiff as one who might be readily persuaded and deluded. There are but few cases in the books where a deed or will has been set aside on the sole ground that the grantor or testator was mentally incompetent; but marked mental feebleness once being established, a lesser degree of fraud or undue influence is sufficient to vitiate the legal act of a defective. "Inadequacy of consideration is persuasive, although not conclusive, evidence of mental incapacity, and where mental weakness and inadequacy of consideration co-exist they may together furnish ground for invalidating a deed." 26 C. J. S., Deeds, sec. 54, p. 268.

The plaintiff also testified, as did her husband, who cannot read, that there had been no discussion whatever of the sale of the land, or of the making of a deed, but that the plaintiff and Ashville H. Collins had discussed the old debt from his father to her mother, and they further testify that they understood from Ashville that the paper which plaintiff signed was merely something to enable Ashville to borrow money for the payment of that debt. The notary, however, says he read the deed to the plaintiff. This she admits, but adds that she gave no heed to the reading, and did not understand what was being read to her. The Collinses also say that subsequent to the execution of the deed, the plaintiff wrote asking to buy back part of the land, but that the letter received could not be found.

On this evidence, including the inadequate price, the plaintiff's mental condition, and the inconsistent and unwarranted claim of the defendants to the equitable title to the land under the deed which they could not but have known to be forged, the trial chancellor found and decreed that the deed of November 2, 1933, "was obtained and procured to be made by misrepresentation and fraud, and at the time said deed was executed the said Angeline Hardin did not have sufficient possession of her mental faculties to execute the said deed and to transact such

business, and that said deed ought to be cancelled and rescinded, it is, therefore, adjudged, ordered and decreed that the said deed bearing date and signed· as aforesaid, be and the same is hereby cancelled and rescinded and held for naught, and to have no more force or effect than if the same had never been entered into by the said parties who signed the same." This conclusion, too, was reached upon conflicting evidence, and it is sufficiently supported by the testimony in the case to put it beyond the proper function of an appellate court to reverse. *Wright* v. *Goins,* 105 W. Va. 332, 142 S. E. 438; *Walton* v. *Pritt,* 93 W. Va. 375, 116 S. E. 759; *Baughman* v. *Hoffman,* 90 ·W. Va. 388, 110 S. E. 829; *Ross* v. *McConnaughy,* 85 W. Va. 199, 101 S. E. 443; *Wethered* v. *Conrad,* 73 W. Va. 551, 80 S. E. 953; *Stevens* v. *Johnson,* 72 W. Va. 434, 78 S. E. 377; *Crouch* v. *Crouch,* 70 W. Va. 587, 74 S. E. 726; *Bank* v. *Thompson,* 63 W. Va. 196, 59 S. E. 974.

The final decree finds that the Collinses were to pay taxes on this land in lieu of rent and therefore denies plaintiff's claim for rent. The claim for timber is not supported by evidence, and is ignored in the decree, which is equivalent to a denial. No restitution of consideration is required, evidently for the reason that none is shown to have been paid. The rights of the parties on the two one-hundred dollar notes, which appear to be in litigation in a law proceeding, are not adjudicated. This decree, therefore, places the parties in precisely the position which they occupied before the execution of the deed of November 2, 1933. Neither has lost anything. If the deed had stood, the plaintiff would have lost her land for no return whatever, and defendants would have had the farm for nothing. Such a result would not commend itself to equity. Nothing in the case justifies the application of the doctrine of laches.

The decree appealed from is affirmed, with costs against the adult appellants.

*Affirmed.*