# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Subhash Gupta,**
**Plaintiff Below, Petitioner**

**vs)  No. 17-0944** ( Jefferson County 15-C-28)

**Christina Campbell, Administratrix of the Estate of Mary C. White,**
**Defendant Below, Respondent**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Subhash Gupta, by counsel Christopher P. Stroech, appeals the Circuit Court of Jefferson County's February 8, 2017, order denying petitioner's petition to quiet title and granting respondent's counterclaim. Respondent Christina Campbell, Administratrix of the Estate of Mary C. White, by counsel Charles S. Trump, IV, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2003, Mary C. White ("Ms. White") and her husband Ralph White purchased certain real property located at 910 Tuscawilla Drive in Charles Town, West Virginia, valued at approximately $205,000. On November 26, 2006, Ralph White died, leaving his share of the Tuscawilla property to Ms. White. Upon the death of her husband, Ms. White, then in her eighties, moved to North Carolina to reside with her daughter. Following Ms. White's relocation, the Tuscawilla property was rented to tenants. In 2010, Ms. White returned to Charles Town and moved into the home of her granddaughter, Respondent Campbell. In June of 2010, Ms. White purchased the home next door to Respondent Campbell's home and used the "entire amount of her life's liquid savings" to make the purchase.

The parties do not dispute that the real estate taxes for the Tuscawilla property were not paid by or on Ms. White's behalf for 2011. A notice of tax delinquency was sent to Ms. White on October 6, 2012, but no action was taken by her or on her behalf. In November of 2012, petitioner purchased the Tuscawilla property at the Jefferson County Sheriff's Office's property tax lien sale for $9,040.57.[1] Petitioner avers that in an effort to convert the lien he purchased on

---

[1] Petitioner paid $6,500 for his purchase of the 2011 ad valorem property taxes and $2,547.57 for the 2012 property taxes.

the Tuscawilla property into title, he provided proper notice to all interested parties as required by law. Neither Ms. White nor her agent Respondent Campbell redeemed the property during the eighteen-month statutory time period permitted for redemption. Accordingly, by deed dated April 1, 2014, and recorded April 4, 2014, the Tuscawilla property was conveyed to petitioner.

From April 1, 2014, through September 1, 2014, tenants occupied the Tuscawilla property and paid rent in the amount of $1,250 per month. The property was vacant from September 1, 2014 through April 1, 2015, when new tenants moved into the property and paid monthly rent of $425. When petitioner acquired the Tuscawilla property in April of 2014, he advised the tenants that he was the new owner and that they should start paying rent to him. In turn, the tenants contacted Respondent Campbell. It was ultimately determined that Ms. White would keep all rental payments pending this litigation.[2] Respondent Campbell alleges that she learned Ms. White's Tuscawilla property had been sold when the tenants contacted her regarding rent payments. Respondent Campbell, who held her Ms. White's power of attorney, engaged counsel for Ms. White and "immediately sought to redeem" the property.

On September 12, 2014, Respondent Campbell executed and recorded a "notice by a mentally incapacitated person to redeem property conveyed by tax deed" with the County Clerk of Jefferson County. In the notice, Respondent Campbell asserted that Ms. White was mentally incapacitated on April 1, 2014, the date the Tuscawilla property was conveyed by tax deed to petitioner. Respondent Campbell offered to pay the funds necessary to redeem the property, $12,354.29, but petitioner rejected the redemption attempt. On February 9, 2015, petitioner filed a petition to quiet title to the property, pursuant to West Virginia Code §§ 11A-4-6 and 55-13-1. Respondent Campbell filed an answer and counterclaim asserting Ms. White's mental incapacity on the date the property was conveyed by tax deed to petitioner and asserted Ms. White's right to redeem the property. Respondent Campbell then paid the funds necessary to redeem the property, $12,354.29, to the clerk of the circuit court. The circuit court ordered the redemption money to be deposited and held by the clerk, pending the outcome of the case.

In March of 2015, Respondent Campbell began the process of becoming the appointed guardian and conservator for Ms. White, the first step of which was the adjudication of Ms. White as a protected person. During the process of Ms. White's adjudication as a protected person, her long list of medical conditions and medications were discussed by her physician, Dr. Alfert Shakespeare. Dr. Shakespeare noted that Ms. White had "dementia, poor attention that was age related, and diminished capacity." Dr. Shakespeare found that Ms. White had cognitive and functional limitations, including difficulty comprehending complex medical information and understanding financial records. He noted that Ms. White was dependent on Respondent Campbell for "activities of daily living." On June 15, 2015, the circuit court adjudged Ms. White as a protected person incapable of managing her own affairs, and her granddaughter, Respondent Campbell, was formally appointed as her guardian and conservator.

---

[2] Petitioner notes that the total amount of rental income derived from the Tuscawilla property from the conveyance date of April 1, 2014, to the bench trial of May 4, 2016, was approximately $12,200.

2

A bench trial on petitioner's petition to quiet title and Respondent Campbell's counter-claim was held on May 4, 2016, at which the parties presented evidence related to Ms. White's mental fitness. Dr. Shakespeare testified that Ms. White was unable to manage any complex issues, financial, or business affairs on April 1, 2014, due to her lack of mental capacity. Like many patients her age, Dr. Shakespeare noted that Ms. White suffered from mental incapacitation during the previous two to four years prior to April of 2014 and that her incapacitation became noticeable by "everybody around 2014 and" 2015. Under cross-examination, petitioner asked Dr. Shakespeare if he held his opinion regarding the mental incapacity of Ms. White on April 1, 2014, to a reasonable degree of medical certainty, to which Dr. Shakespeare replied: "She can answer simple questions, 'Do you hurt?'. . . , but if I ask her a little more complex question, 'did you have a urinary tract infection two days ago?' I do not think she would be able to answer me."

Several lay witnesses testified regarding their observations, which corroborated the medical opinions of Dr. Shakespeare and established that Ms. White's mental deterioration began before April 1, 2014.[3] A family friend of Ms. White's, Eutoker Stevens, testified that before April 1, 2014, Ms. White seemed "lost in the distance" and while she comprehended, she really didn't understand what was going on. Respondent Campbell testified that when she was informed that petitioner introduced himself to Ms. White's tenants at the Tuscawilla property as the new owner, she "went on a hunt for missing mail at her grandmother's house . . . [and] found a tax notice . . . in her grandmother's linen closet." Since 2013, Respondent Campbell noted that her grandmother was "not in her right mind" and would do peculiar things like putting her laundry in the refrigerator.

At trial, Carlyle Millard, a representative of a reverse mortgage company, testified that Ms. White executed documents for a complex reverse mortgage on November 24, 2013, just four months before the April 1, 2014 tax sale. However, the court noted that Respondent Campbell, and not Ms. White, made all the arrangements for the reverse mortgage and further noted that the money from the reverse mortgage was used to install a handicap ramp and chair lift in Ms. White's new home. Respondent Campbell recalled that the only involvement Ms. White had in the reverse mortgage transaction was to sign her name on documents where she was told to sign them. Mr. Millard, who was not an attorney but a notary public who notarized the reverse mortgage documents, testified that he had no independent recollection of Ms. White and did not know if Ms. White was competent on April 1, 2014.

At trial, petitioner argued that because Respondent Campbell had accepted service of the property sale notice on Ms. White's behalf and had, thereafter, failed to timely act and redeem the property, Ms. White's ability to redeem the property was now void. Conversely, Respondent

---

[3] Ms. White's neighbor, Brian Dennis Bellman, testified that during the period at issue he noticed a "marked decline" in Ms. White's medical condition. Long-time friend Herman Vales testified that he noticed a significant deterioration in Ms. White's mental condition during Christmas of 2013. Ms. White's great-granddaughter testified that by late 2011 Ms. White could not remember how to write a check, use the telephone, or remember her doctor's appointments. Further, the great-granddaughter testified that by 2013, Ms. White could not make her own food and would often leave on the oven and stove.

Campbell argued that there was substantial evidence in the record before the court of Ms. White's mental incapacity, which tolled the time to redeem the Tuscawilla property. Further, Respondent Campbell noted that within a year after the tax deed was entered, Ms. White sought to redeem her property by and through Respondent Campbell.

On February 8, 2017, the circuit court entered an order declaring that Ms. White was mentally incapacitated on April 1, 2014. The court granted Respondent Campbell's counterclaim to redeem the Tuscawilla property and denied petitioner's request for rental income. The court found that because Ms. White had the right to redeem her property, Respondent Campbell as her guardian and representative, had the right to redeem the property in her stead. On May 12, 2017, Ms. White died and Respondent Campbell was appointed as executor of Ms. White's last will and testament; she also became the fiduciary for Ms. White's estate.

Following entry of the February 8, 2017, order, Respondent Campbell filed a motion for attorney's fees and costs due to petitioner's "vexatious disregard of the law," which forced Respondent Campbell to resort to litigation. By order dated October 6, 2017, the circuit court denied Respondent Campbell's motion for attorney's fees and costs and noted that petitioner "lawfully obtained the real estate and subsequently commenced this action to protect any rights he may have had to the property." It is from the circuit court's February 8, 2017, order that petitioner now appeals.

On appeal, petitioner asserts four assignments of error. In his first and second assignments of error, petitioner challenges the circuit court's determination that Ms. White was mentally incapacitated at the time the tax conveyance deed was issued. Next, petitioner argues that the court erred in finding that the inactions of Respondent Campbell, as the agent of Ms. White, did not void the tolling of redemption time. Last, petitioner contends that the court erred in determining that he was not entitled to certain lost rental income.

We have generally held that in reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review. *See* Syl. Pt. 1, *Public Citizens, Inc., v. First National Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996). Further, we have determined that

> [t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the circuit court in making evidentiary and procedural rulings. . . . Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).

Petitioner is critical of the circuit court's interpretation of a "mentally incapacitated" person, described in West Virginia Code § 11A-4-6, and finds fault with the court's citation of a

number of competing definitions of mental incapacity in the context of criminal proceedings and property transfer cases. Petitioner argues that the circuit court's order "does not provide a clear definition of 'mental incapacitation' in the context of the facts herein." Conversely, Respondent Campbell argues that the circuit court correctly analyzed the meaning of the term mentally incapacitated, as that term in used in West Virginia Code § 11A-4-6, and correctly applied the law to the facts that were proven by the evidence at trial.

The parties agree that the Legislature did not define the term "mentally incapacitated person" within the context of West Virginia Code § 11A-4-6. However, the Legislature declared, in West Virginia Code §11A-4-1, that it was "the intent and purpose of the Legislature to provide reasonable opportunities for delinquent taxpayers to protect their interests in their lands and to provide reasonable remedies in certain circumstances for persons with interests in delinquent or escheated lands." Further, this Court has long noted that "[s]tatutes allowing redemption of lands sold for taxes must be liberally construed in favor of persons entitled to redeem." Syl. Pt. 2, *Poling v. Parsons*, 38 W. Va. 80, 18 S.E. 379 (1883).

With these precepts in mind and based upon our review of record, we agree with Respondent Campbell and find no error. In deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co., v. State Tax Dep't*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). Here, we find that an examination of the statute reveals that the "language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions" and that the provision is of "such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998). We have long reasoned that "[a] statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). In construing the meaning of an ambiguous statute, we have noted that the court must be mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

Here, the Legislative intent of West Virginia Code §11A-4-6 is clearly noted in West Virginia Code §11A-4-1 and requires the liberal construction of redemption statues in favor of persons entitled to redeem. While petitioner is critical of the circuit court's analysis of the meaning of "mental incapacity" in West Virginia case and statutory law, we find that the circuit court, as Respondent Campbell noted, made a "careful, thorough, and circumspect analysis of the meaning of 'mentally incapacitated' as that term is used in other areas of West Virginia law."

The circuit court specifically referenced this Court's ruling in *Hardin v. Collins*, 125 W. Va. 81, 23 S.E.2d 916 (1943), and *Delaplain et al. v. Grubb et al.*, 44 W. Va. 612, 30 S.E. 201 (1898), wherein it is noted that advanced age was not sufficient evidence alone to determine mental capacity in the context of property transfers, but that the grantor must not know the nature and effect of the deed to invalidate the same. In applying similar precepts to this case, it is clear that Ms. White was mentally incapacitated at the time of the conveyance of the tax deed to petitioner. The totality of the evidence proffered at the bench trial indicated that Ms. White was

5

not only of an advanced age, but that she did not know the nature and effects of her actions and was not independently able to handle her own business or personal affairs without assistance.

Respondent Campbell further argues, and we agree, that under any reasonable definition of mental incapacitation, it is clear that Ms. White was mentally incapacitated on the date of the tax conveyance deed, April 1, 2014. As the circuit court noted:

> The evidence in this case, however, on the question of her mental capacity on April 1, 2014, as well as before and after that date, is overwhelming and unrefuted. Everyone who testified, including Mary C. White's physician, Dr. Shakespeare, and all of the people who saw her every day, testified that Mary C. White had been suffering mental deterioration and decline for some time before April 1, 2014, so that by April 1, 2014, she was incapable of understanding what was going on around her. The testimony of these many witnesses, a medical expert and lay witness, is compelling evidence . . .

Hence, the circuit court's reasoned findings as to Ms. White's mental incapacitation, which are subject to deferential review and should be liberally construed, must be affirmed by this Court. Accordingly, we find no error.

In his third assignment of error, petitioner alleges that the circuit court erred by finding that the inactions of Respondent Campbell in failing to timely redeem Ms. White's property voided the tolling of the time allotted for redemption. Petitioner argues that the power of attorney that Respondent Campbell held for Ms. White "clearly conveyed" to her the authority to defend Ms. White's ownership interests in the property at issue and that Respondent Campbell failed to act accordingly. However, petitioner cites no case or statutory law in support of his position. Respondent Campbell argues, and we agree, that the provisions of West Virginia Code § 11A-4-6, which are to be liberally construed, clearly provide protections to persons who are mentally incapacitated, such as Respondent Campbell's decedent, regardless of those with a duty or responsibility to act on behalf of the incapacitated person. Accordingly, we find no error in the circuit court's ruling.

Finally, petitioner argues that the circuit court erred in failing to award him damages associated with lost rental income on the Tuscawilla property. Petitioner contends that, as the rightful owner of the property from the date of conveyance of the tax deed to the granting of Respondent Campbell's counterclaim effecting redemption, he was entitled to rental income. Respondent Campbell counters that petitioner is not entitled to any such award of damages and notes petitioner's failure to cite any case or statutory law in support of his position.

Here, the amount petitioner can receive upon redemption is set by statute. West Virginia Code § 11A-4-6 provides, in part, that a person who is mentally incapacitated at the time of delivery of a tax deed "may redeem such real estate by paying to the purchaser . . . the amount of the purchase money, together with the necessary charges incurred in obtaining the deed, and any taxes paid on the property since the sale, with interests on such items . . . ." Respondent Campbell paid petitioner $12,354.29 to redeem the property, which is well above the $9,040.57 petitioner paid for the property on the day of the sale. Further, we note that since September of

2014 (at the latest), petitioner has been on notice of Respondent Campbell's intention to redeem the property at issue on behalf of Ms. White. Respondent Campbell alleges, and we concur, that it would be unjust and inequitable to reward petitioner for refusing to accept the redemption offered by Respondent Campbell in September of 2014 and would create a "perverse incentive … to thwart and delay the legitimate right of an owner to redeem . . . ." Accordingly, we find no error.

For the foregoing reasons, we affirm the circuit court's February 8, 2017, order denying petitioner's petition to quiet title and granting Respondent Campbell's counterclaim.

Affirmed.

**ISSUED:**  November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment