# CHARLESTON.

## HENDERSON v. HENRIE.

Submitted February 1, 1910.   Decided January 31, 1911.

1. SPECIFIC PERFORMANCE—*Contracts Enforceable—Verbal Contract for Sale of Realty.*
   A court of equity will not decree specific performance of a verbal contract for the sale of real estate.

2. FRAUDS, STATUTE OF—*Contract for Sale of Equitable Estate.*
   A contract for the sale of an equitable estate is within the statute of frauds.

3. SAME—*Verbal Contract.*
   To enable a court of equity to exclude a verbal contract of sale of land from the operation of said statute, there must be a collateral circumstance, constituting an independent equity, imposing an obligation in conscience.

4. SAME—*Verbal Contract for Sale of Land.*
   Mere breach of an oral agreement does not constitute such an equity.

5. SAME—*Verbal Agreement for Sale of Land.*
   A verbal agreement between two bidders for land at a judicial sale, each desiring a portion thereof, to the effect that the successful bidder will allow the other to take and pay for the portion he desires, is, in substance and effect, a contract for the sale of land and unenforcible, the successful bidder having paid for all of the land and the unsuccessful bidder not having paid for the portion it was agreed he should have, though prevented from doing so by breach of the agreement on the part of the other.

Appeal from Circuit Court, Wood County.

Action by Jock B. Henderson against James M. Henrie and others. Judgment for plaintiff, and the mentioned defendant appeals.

*Reversed and Dismissed.*

*McCluer & McCluer,* for appellant.

*V. B. Archer* and *Wm. H. Wolfe, Jr.,* for appellee.

POFFENBARGER, JUDGE:

The general nature of the contract, involved in this cause, is set forth in the report of a former decision here, on another

68 W. Va.

appeal, found in 61 W. Va. 183. This appeal is from a final decree, requiring Henrie to convey to Henderson a portion of the land, purchased by him at the judicial sale, by way of specific performance of the verbal agreement, constituting the basis of the suit.

The former decision disposes of the charge of illegality or invalidity of the contract, as alleged, on the ground of fraud, or inhibition by public policy; and the remaining argument, against the sufficiency of the bill, namely, that it does not allege irreparable injury, is wholly inapplicable, the legal remedy for breach of a contract to convey land being obviously inadequate, and the law affording no remedy at all for enforcement of a trust. Hence the demurrer was properly overruled.

The vital inquiry is the character of the contract, viewed in the light of the statute of frauds, relied upon in a plea to the bill, a question neither raised nor considered on the former appeal, involving only the ruling on a motion to dissolve an injunction, made in vacation. At that time, no demurrer, plea or answer had been filed. The contract is verbal, and prior in date to the purchase by the defendant. The plaintiff, though willing to pay, or, to be strictly accurate, re-pay, a portion of the purchase money, and claiming the right to do so, has in fact paid nothing at all and title has vested in the defendant. At the date of the making of the agreement, neither party had any interest whatever in the land, either legal or equitable, and there was no copartnership relation. Each was to take and hold a portion of the land. In bidding, each acted for himself and as agent of the other at the same time, the action in one capacity, relating to one portion of the land, and in the other, to the residue thereof.

The basis of the cause of action, as disclosed by this inquiry and analysis, seems to be the oral agreement and nothing more. We perceive nothing of a collateral nature, constituting an independent equity, such as payment of purchase money; a prior interest in the land, not released; lack of consideration, moving from the grantee, accompanied by an agreement to take mere legal title as a necessary step in the execution of some plan or purpose, previously agreed upon; or a copartnership, covering the subject matter of the conveyance. Such an equity seems to be essential to the establishment of a trust or immunity of a con-

tract of sale of land from the inhibition of the statute of frauds. In *Floyd* v. *Duffy,* 68 W. Va. 339 (69 S. E. 993), we said, speaking of certain provisions of that statute: "These provisions absolutely prevent the acquisition of any estate in land for more than five years by means of a mere verbal contract. There must be something more, an equity outside and independent of, or in addition to, the contract. * * * By the great weight of authority, if not, indeed, by all courts, an agreement on the part of one purchasing land with his own money and taking the conveyance in his own name, to hold it in trust for another person, or to reconvey it to the grantor, is within the statute of frauds." In resulting trusts, the basis of the equity is the payment of money. In those instances in which deeds absolute on their faces are construed and enforced as mortgages, the antecedent interest in the land lies at the bottom of the equity. In cases of voluntary conveyances for specific purposes, the fraud. of the grantee is the circumstance, imposing an obligation in conscience. To apply the statute under such circumstances would allow the grantee to obtain the land for nothing, defeat the meritorious purpose of the conveyance and make the statute an instrument of fraud, contrary to legislative design. As copartnership is a confidential relation and there is a joint interest in firm assets, a conveyance to one member under a purchase with partnership funds, creates a constructive or resulting trust, the confidential relation constituting the ground of equity. In cases of exception, on the ground of part performance, the altered situation of the vendee in reliance upon the contract, working irreparable injury, constitutes the independent equity. In parol gifts of land, enforcible, the equitable foundation is the same.

No precedent or declaration of principle by this Court is broad enough to except this agreement from the operation of the statute The decisions making the nearest approach to it are *Currence v. Ward,* 43 W. Va., 367, and *Hamilton v. McKinney,* 52 W. Va. 317; but the *cestui que trust* in the former had an antecedent interest in the land, being an unfortunate debtor, for whose benefit another had purchased it at judicial sale; and, in the latter, the plaintiff had paid a portion of the purchase money. Some of the language in the opinions in both cases may be broader than the view here expressed, and unnecessarily so, since the facts established in each brought it within the limits

here fixed. However that may be, the broad terms there used must be read and considered in the light of the facts, since the court cannot be deemed to have intended to assert anything beyond the equities and requirements of the particular cases. Ordinarily anything additional would be regarded as *obiter dicta,* having only persuasive influence, and rejected for unsoundness, if unable to stand the test of logic and the application of general legal principles, and particularly so, if in conflict with express decisions and the general current of authority, applicable to the precise question. Taken as a whole, the opinion in *Currence v. Ward* asserts and applies sound propositions of law. One part must not be taken to the exclusion of others. By the terms of the contract, Currence retained his equity of redemption. Between him and the Wards, the relation of debtor and creditor was established and continued. He paid money under that contract. His real status was that of mortgagor. Judge BRANNON is not to be regarded as having attempted to state all the law of the case in any single sentence.

The assertions in *Floyd* v. *Duffy,* that an agreement, valid in law, is valid in equity, and one, not valid in law, will not be enforced in equity, and that equitable title to land must rest upon something more than a mere verbal contract, are in perfect accord with almost uniform authority everywhere and not in conflict with any actual decision of this Court. Our decisions, properly analyzed and understood, will verify this statement. In every instance of exclusion from the statute, an independent equity has been found. *Floyd* v. *Duffy,* cited; *Bond* v. *Taylor,* 68 W. Va. 317 (69 S. E. 1000) ; *Johnson* v. *Ludwick,* 58 W. Va. 464; *Ratliff* v. *Sommers,* 55 W. Va. 30; *Moore* v. *Mustoe,* 47 W. Va. 549; *Boyd* v. *Brown,* 47 W. Va. 238; *Myers* v. *Myers,* 47 W. Va. 487; *Harris* v. *Elliot,* 45 W. Va. 245; *Currence* v. *Ward,* 43 W. Va. 367; *Marshall* v. *Hall,* 42 W. Va. 641; *Webb* v. *Bailey,* 41 W. Va. 463; *Deck* v. *Tabler,* 41 W. Va. 332; *Siler* v. *Mohn,* 37 W. Va. 507; *Frame* v. *Frame,* 32 W. Va. 488; *McClintock* v. *Loisseau,* 31 W. Va. 865; *Shaffer* v. *Petty,* 30 W. Va. 248; *Kimmins* v. *Oldham,* 27 W. Va. 258; *Titchenell* v. *Jackson,* 26 W. Va. 460; *Heiskell* v. *Powell,* 23 W. Va. 717; *Murry* v. *Sell,* 23 W. Va. 475; *Hamilton* v. *Stule,* 22 W. Va. 349; *Rennick* v. *Ludington,* 20 W. Va. 511; *Campbell* v. *Fetterman,* 20 W. Va. 398; *Middleton* v. *Selby,* 19 W. Va. 167; *Pack* v. *Hansbarger,*

17 W. Va. 313; *Snyder* v. *Martin,* 17 W. Va. 276; *Troll* v. *Carter,* 15 W. Va. 567; *W. Va. &c. Co.* v. *Vinal,* 14 W. Va. 637; *Tracy* v. *Tracy,* 14 W. Va. 243; *Smith* v. *Patton,* 12 W. Va. 541; *Vickers* v. *Sisson's Admr.,* 10 W. Va. 12; *Lowry* v. *Buffington,* 6 W. Va. 249; *Capehart* v. *Hale,* 6 W. Va. 547; *Pumphrey* v. *Brown,* 5 W. Va. 107; *Hardman* v. *Orr,* 5 W. Va. 71; *Hedrick* v. *Hern,* 4 W. Va. 620.

Seeking the limitation, as indicated by decisions, denying exception or exclusion, we find it in perfect harmony with these propositions. *Henderson* v. *Hudson,* 1 Munf. 510; *Jarrett* v. *Johnson,* 11 Grat. 327; *Nash* v. *Jones,* 41 W. Va. 769. In all these cases, claims for relief in equity, resting upon mere verbal contracts and nothing more, have been denied, without reference to the forms of such contracts or the relations of the parties, the contracts, relied upon, being substantially for the sale of real estate. In the first two, claims of joint purchase were rejected, and, in the other, a claim of purchase by an agent, the alleged principal having paid none of the purchase money. Sugden on Vendors, Vol. II, top. p., sec. 15, chap, 21, saying: "Where a man merely employs another person by parol, as an agent to buy an estate, who buys it for himself and denies the trust, *and no part of the purchase money is paid by the principal,* and there is no written agreement, he cannot compel the agent to convey the estate to him, as that would be directly in the teeth of the statute of frauds," is sustained by a vast array of authority. We observe the same as to the text in 29 A. & E. Enc. Law. 889, saying: "It is equally well settled that agreements for joint purchases of land, not for the purpose of speculation, whether the title is taken in the name of one for the benefit of all or in the individual names of the parties, are within the statute, and are required to be in writing."

Joint purchases of land are sometimes upheld, as having been made in pursuance of an existing partnership or an agreement for one, the relation of copartnership constituting the essential equitable circumstance, attending the verbal contract. *Floyd* v. *Duffy,* cited; *Bond* v. *Taylor,* cited; 20 Cyc. 237; but we have here not a particle of evidence of such a relation or agreement.

The suggestion of immunity from the statute, on the ground that the contract was made before the defendant acquired the legal title and was recognized by him, while holding the equit-

able title only, founded upon expressions in *Currence* v. *Ward* and *Hamilton* v. *McKinney,* is wholly untenable, in view of the application of the statute of frauds to equitable estates. See 20 Cyc. 230 and 29 A. & E. Enc. Law 888, citing numerous decisions, holding it to be applicable to such interests. I have found no Virginia or West Virginia decisions to the same effect, and the 9th section of the English Statute, requiring assignments of trust and confidences to be in writing is not in force here; but equitable estates are regarded in these states as having about all the incidents of legal ones. 2 Min. Inst. 195-6; 1 Lomax Dig. 277. They are regarded and dealt with as real estate. In some of the states, said section may be, and no doubt is, in force. In view of this, our holding as to that question would not necessarily have to harmonize with those of such other states. However, as equitable titles are here regarded as land and estates of inheritance, they fall within both the terms and policy of sec. 1, ch. 71 and sub-sec. 6 of sec. 1, ch. 99 of the Code. That these statutes are broad enough to reach them is suggested in 1 Lomax Dig. 278.

Under these principles and conclusions, we reverse the decree, dismiss the bill and decree to the appellant his costs in the court below as well as in this Court.

*Reversed and Dismissed.*