ED. L. BOGGS *et al.* *v.* HARRY M. BOGGS *et al.*

(No. 9429)

Submitted April 8, 1943. Decided May 11, 1943.

Fox, Judge, absent.

*Van B. Hall, Eakle & Eakle* and *Blue, Dayton & Campbell,* for appellants.

*Hines & Davis* and *Henry McLane,* for appellees.

Riley, President:

Plaintiffs, Ed. L., J. B., Fred, Guy, A. S., C. A., and E. A. Boggs, Sabina C. Mealy, Mary S. Hyer, Katie Ball and Ella Pembroke, children and heirs at law of James M. Boggs, deceased, and Russell Y. Boggs and Earle L. Boggs, Trustees, filed their bill of complaint in the Circuit Court of Braxton County against Harry M. Boggs, son of said James M. Boggs, and Della Boggs, wife of Harry M. Boggs, for the purpose of impressing a trust upon the legal title to the surface of two tracts of land containing 761 acres and 50 acres, respectively, situate in Braxton County, in favor of all of the children of said decedent. Plaintiffs complain of a decree which dismissed their bill.

The land in controversy was the subject of a deed of conveyance, dated February 2, 1933, wherein J. M. Boggs and Lidie B. Boggs, his wife, by deed of conveyance granted, with covenants of general warranty, the sur-

face of the aforementioned tracts of land to his son, Harry M. Boggs. The conveyance was "in consideration of Two Thousand Dollars to be paid to said first parties within three years from this date, with interest, payment to be made within said date or as fast as the land is disposed of by said second party". The grantors reserved a vendor's lien to secure the payment of the purchase money and interest on any unpaid part thereof.

J. M. Boggs died intestate on March, 1934; and plaintiffs, admitting that the deed upon its face appears to be absolute, contend that the facts and circumstances surrounding the execution and delivery of said deed and the admissible declarations of both J. M. Boggs, the grantor, and Harry M. Boggs, the grantee, establish by a clear preponderance of the evidence that the conveyance was in trust. Defendant, Harry M. Boggs, disputes such contention and avers in his answer that J. M. Boggs during his lifetime made advances both in money and real estate to his various children, and by way of advancement he gave defendant a farm, situate near the mouth of Big Otter Creek, which was not of a value equal to that in property and advancements given to the other children of J. M. Boggs, and that though the deed stated the consideration of two thousand dollars, it was the intention of the grantor in that conveyance to give defendant an amount sufficient to make defendant "even with the advancement theretofore made by him to his other children". Defendant asserts in his answer that he is bound and obligated to pay the purchase price of two thousand dollars, together with interest thereon.

The record discloses that James M. Boggs, whose age at the time of his death was ninety-two years, had been an unusually active man; that during his lifetime he had acquired and disposed of sundry parcels of real estate; and while, according to the facts adduced, on February 2, 1933, approximately one year before his death, he was in a weakened condition and his eyesight dim, he nevertheless prepared in his own handwriting the deed from himself and wife to his son, Harry M. Boggs. There is no dispute by plaintiffs of the grantee's testimony that he

knew nothing of his father's intention to convey to him the parcels of land in question, until on February 12, 1933, when Harry M. Boggs, in response to a letter received by him from his father asking him to come to his home, did so, at which time his father delivered to him the deed for the property in controversy. According to the grantee, "Father had never said anything to me about what to do with this land more than to sell, and the deed said to sell and pay for it, he hadn't talked to me about the land neither before he deeded it or after".

C. A. Boggs, Ella Pembroke, Sabina Mealy, Katie Ball, and her husband, George W. Ball, testified that Harry M. Boggs had said the land had been conveyed to him in order to make sale of the land "for him to sell it for him", while defendant denies any such disclaimer. He relies upon the deed itself in assertion of his title thereto.

Russell Boggs, son of J. B. Boggs, testified that in a conversation between himself and Harry M. Boggs, the latter stated, in addition that the land was deeded to him to sell, that J. M. Boggs was to give him one hundred acres on Coon Creek for selling the land described in said deed, and that when Harry told his father that he would rather have the camp (the fifty-acre tract described in said deed), J. M. Boggs responded, "You don't need a deed, you have already got a deed". Defendant's explanation of this testimony is that a portion of his farm had been taken for road purposes, occasioning severe damages to his property, for which, according to his opinion, he had not been amply compensated, and that by reason thereof defendant's father proposed to give him the sum of five hundred dollars, and in lieu thereof had proposed turning over to him the hundred acres of land. Defendant related that he told his father he would rather have the "fifty-acres where the camp was", than the larger tract of one hundred acres, and upon that occasion his father replied, "You have already got a deed for that". He denies that he told anyone that he was to have the one hundred acres for making sale of the land in controversy.

Plaintiffs introduced a letter from grantor to his daugh-

ter, Sabina C. Mealy, dated May 7, 1933, wherein he said in part: "I don't want you to worry about the Braxton lands I am managing those lands the best possible way to get the taxes cut down I put the upper Rock camp lands 811 acres in Harry Boggs hands to sell for me in order to get the assessment cut down to not more than $2,000.00". Plaintiffs likewise point to a lease dated September 1, 1933, whereby a portion of the land in controversy was leased to J. A. Williams, by written instrument prepared by J. M. Boggs, and executed by J. M. Boggs, together with Harry Boggs, and it is Williams' testimony that he paid the rent to J. M. Boggs "as long as he was living", and after his death he paid it to the son Harry. In support of his assertion that the land belongs to him, defendant likewise introduced a letter dated March 8, 1933, written by his father to him, in which the former writes about the sale of some land to one A. D. Hughes, and therein says in part: "He might take 100 acres of the hill land including the piece between Sherman Carr and Jennings Stewart if it takes your place on Rock camp to make the 100 acres * * *", while in another portion of the letter he says, "He don't say where he wants the land you might sell him 100 acres taking 50 you get at mouth of Rock camp joining Stewart". In a second letter written by his father to defendant, dated March 19, 1933, he says, "Since you told me the land I sold you don't take any of this fine land on the hill I am of the opinion I had better not sell to Hughes * * *."

Defendant admits that he proposed to the other heirs of J. M. Boggs his willingness to meet with the heirs and "take the deed and what letters and things I had, and go over this altogether, and then, after them hearing my side of it and all, if the majority of them—I even left it up to the majority of them—the majority of them wanted me to deed it back, I would do it".

There appears in the record a letter, dated January 13, 1941, directed to defendant, and signed by all of the heirs other than defendant, requesting that defendant convey to Russell Y. Boggs and Earle L. Boggs, Trustees, the two

tracts of land, and stating that "it will be quite inconvenient for us to get together for" the purpose of having the heirs request a reconveyance of the property. Likewise there appears in the record, under date of January 26, 1937, a written demand on defendant, signed by the heirs other than defendant, demanding that he convey by proper deed the two tracts to Katie Ball, Trustee. A. S. Boggs, one of the heirs, testified that he asked Ed. L. Boggs, the administrator why he did not have a meeting and give "Harry an opportunity to show his side of the case that they might all have an understanding of the affair and settle it up amongst ourselves". This witness likewise testified that he told Ed. L. Boggs, when he brought the aforementioned letter of January 13, 1941, to him for his signature, that he said, "I didn't like to sign the letter, but if that is what all the family wanted done, why, I would put my name on the letter". According to A. S. Boggs, his brother, Harry, was never granted the privilege of a family discussion.

Ed. L. Boggs, one of the plaintiffs and also administrator of his father's estate, testified that he learned of the contemplated execution of the deed to Harry when, on February 11, 1933, he went to his father's home, together with his son, Earle L. Boggs, for the purpose of taking the acknowledgment to the deed. This witness admits that he protested to his father to the proposed act of executing and delivering the deed to his brother Harry, and quotes the deceased grantor as saying that he "made it to him to sell for him", in response to his (Ed. L. Boggs') inquiry why he was making the deed to Harry. In this he is corroborated by the notary, who added that the grantor explained, "I am not able to get out to look after it".

Defendant introduced a number of witnesses, who relate that they discussed the matter of the land in controversy with J. M. Boggs, subsequent to the execution of the deed to Harry. One of the witnesses, Norman Davis, testified that after delivery of the deed he made inquiry concerning the purchase of the land, and he quotes J. M. Boggs as saying, "He said it didn't belong to him, he said I would

have to see Harry Boggs—Harry Boggs owned it". Likewise the witness, L. L. Cunningham, testified to a conversation with J. M. Boggs subsequent to the execution of the deed, and related that the grantor told him about giving his children farms, and then said that he had sold the farm on Rock camp to Harry. Other witnesses relate that Boggs told them either that he had sold the farm to Harry or that it belonged to Harry. One of the witnesses related: "Well, I was there just a short time after he had deeded Harry the land, and he was telling me about selling Harry the land, and he said the reason why he sold him this land so cheap he had give all the boys good farms, and that's the reason why he sold him this land so cheap".

According to Ed. L. Boggs, he advised defendant in April, 1936, that he had a purchaser for the fifty-acre tract at a price of two thousand dollars, to which defendant responded that the amount was insufficient and that he would not "make a deed for that", while later in another conversation between the two brothers, regarding a second offer of twenty-five hundred dollars, defendant said, "I am not going to sell that camp. I am going to keep it".

Another circumstance relied upon by plaintiffs to support their contention is the alleged purpose of J. M. Boggs to make equal division of his estate among his children. In 1896 the decedent had executed and delivered to each of six of his children a deed for a farm, and the following language taken from the deed to plaintiff, Mary S. Hyer, is, except for the value placed by J. M. Boggs upon the property granted and stated therein, typical of the language contained in the other conveyances:

> "This conveyance is made as and advancement to the said Mary S. Hyer, by said J. M. Boggs, and is valued at Twenty-five hundred dollars, but this is not to be taken to preclude the said Mary S. Hyer from *partcipation* in distribution of the Estate of said J. M. Boggs, should all his children have an amount equal to said sum, but all the said children to be made equal in the distribution of said estate, and should there not be sufficient of said J. M. Boggs estate to make all his other

children equal in amount to twenty-five hundred dollars, then the said Mary S. Hyer to pay for the purpose of Equalizing such sum as shall be necessary therefor, and a lien is hereby retained on the land hereby conveyed to secure such sum, and in case the estate of said J. M. Boggs shall be sufficient to make all his children more than the said sum of Twenty five hundred dollars each, then the said Mary S. Hyer to participate·in distribution, treating this as advancement of the value aforesaid, without bringing same into hotch pot, but such distribution to be so as to make all the said children equal when final Distribution".

In 1908 decedent granted to two other children two separate tracts of land, likewise containing language pertaining to the advancements similar to that quoted from the Hyer deed, except as to the amount. In 1912, by deed of conveyance, he granted to defendant, Harry M. Boggs, a tract of land near Ivydale, and we note this instrument does not contain words to the effect that the conveyance was an advancement, and such provision is likewise lacking in a conveyance from decedent to J. B. Boggs, dated June 13, 1929, wherein there is a provision made for the payment of ten thousand dollars, part consideration for the conveyance, after the grantor's death, to four of the Boggs children and grantor's widow, if she is then living.

Plaintiffs say that the parol evidence rule is not applicable to the instant situation, because they do not seek cancellation of the deed itself, but rather the establishment of a trust. Under Code, 36-1-4, first enacted in 1931, it is provided that, "If a conveyance of land, not fraudulent, is made to one in trust either for the grantor or a third person, such trust may be enforced, though it be not disclosed on the face of the conveyance, nor evidenced by a writing", but excluded from the statute's applicability are trusts arising by construction for operation of law. Plaintiffs' position is that an "express trust in the two tracts of real estate conveyed by the deed bearing date the 2nd day of February, 1933, may be established by parol evidence". In *Winfree* v. *Dearth,* 118 W. Va. 71, 188 S. E. 880, this

Court applied the above statutory provision to a deed of conveyance which recited a valuable consideration. In the instant case, the deed likewise states a valuable consideration, but the trial chancellor in dismissing plaintiffs' bill of complaint, in effect, concluded that no trust had been created. The establishment of a trust in a situation such as we are here considering must necessarily challenge the written words of a solemn instrument, and in the instant proceeding, written words of unequivocal meaning. Hence, it seems reasonable that words of an instrument of unconditional conveyance of land should be vitiated through the medium of establishing a trust only upon competent evidence which is so clear as to leave no doubt that a trust was, in fact, created. May we so characterize the conveyance in this case?

From the evidence as detailed it is clear that the record abounds in conflicts of evidence on the material issue. If a trust of the character alleged by plaintiffs actually exists, it must necessarily have arisen at the time that the grantor delivered the instant deed to defendant. The record contains no testimony which shows any such understanding between the grantor and the grantee. There is no witness who takes the stand to say that at the time of delivery, or before delivery, of the deed that the parties to the deed had an understanding that the grantee was to take the legal title to the property in trust. The admissibility of such testimony as was related by Earle Boggs concerning his grandfather's statement that he was conveying the land to the defendant to sell for him, and the statement to like effect in the letter to Sabina C. Mealy, under date of March 7, 1933, becomes moot here, it seems to us, for, assuming the admissibility thereof, we are confronted (1) with statements contained in letters to defendant from the grantor subsequent to the delivery of the deed to defendant, indicating that he had sold the property to Harry M. Boggs, the defendant, which evidence is clearly admissible under the rule of declarations against interest; and (2) with the principle that, "The declarations of a grantor in a deed in disparagement of his title, if made

before he parts with it, are admissible against his grantee, but those made afterwards are inadmissible." *Fry, Trustee* v. *Feamster,* 36 W. Va. 454, pt. 2 syl., 15 S. E. 253; *Dingess* v. *Huntington Development & Gas Co.,* 271 F. 864 (C. C. A. 4).

As shown above, the alleged disclaimer by defendant, testified to by various brothers and sisters of defendant, was by the latter denied, and the testimony of other witnesses, totally disinterested, so far as the record shows, to the effect that grantor had told them that he had sold the property, is a challenge to plaintiffs' testimony that he had conveyed it only for purposes of sale, and the lower court apparently gave credence to their testimony.

It is noted that plaintiffs in their brief attach considerable significance to the fact that no note was given by Harry M. Boggs evidencing his personal obligation to pay the expressed consideration of two thousand dollars for the conveyance of the land in controversy, and plaintiffs say that the omission thereof is unusual and is not the way men ordinarily transact their affairs. We observe that in the deed of conveyance by J. M. Boggs and wife to his son, J. B. Boggs, dated June 13, 1929, the recited consideration was twenty thousand dollars, of which thirty-five hundred dollars was "in hand paid", the sum of sixty-five hundred dollars to be paid within two years or as demanded by the grantor, and the remaining ten thousand dollars to be paid after grantor's death to certain designated members of his family, and grantor retained a lien to insure the faithful performance of all obligations on the part of the grantee. That deed does not recite that the grantee gave to the grantor a note or any other written evidence of his obligation. Therefore, we cannot attach to the omission of a note in the transaction between defendant and his father the pertinency suggested by plaintiffs.

Examination of the deed of conveyance itself likewise counters the intention of the grantor to create a trust. The consideration expressed therein is two thousand dollars to be paid within three years, with interest. The item of interest is certainly not consonant with the idea of a trust,

nor is the retention of a vendor's lien by grantor to secure the purchase money payment and interest.

We therefore are of the opinion that the evidence adduced on behalf of plaintiff, when considered with the other testimony in the record fails to meet the requirement of certainty which the rule requires. We cannot say that the trial chancellor was in error in his conclusion that no trust had been established.

Since we have concluded that no trust has been established so far as the two parcels of land are concerned, the execution of the deed dated August 3, 1939, between the heirs of J. M. Boggs, including Harry M. Boggs and his wife, wherein they conveyed and transferred to Russell Y. Boggs and Earle L. Boggs, Trustees, all of the right, title and interest of which the said J. M. Boggs died seized and possessed, and to which he was in any wise entitled at the time of his death, did not include title to the controverted real estate.

Upon the record before us we cannot say whether all parties necessary to the enforcement of the vendor's lien, provided for in Code, 38-1-1, were parties to the instant proceeding. However, we think the decree below should be modified so that the administrator may hereafter, if he is so advised, institute a separate suit for the enforcement of the vendor's lien and any other rights incident thereto.

To this extent the decree of the circuit court should be modified and the cause is remanded for such purpose; otherwise the decree is affirmed.

*Affirmed and remanded with directions.*