383 S.E.2d 825

Clyde A. LINGER

v.

Mattie Marie ROHR, Harold J. Rohr, Jean Walton, and Harold Walton.

No. 18940.

Supreme Court of Appeals of West Virginia.

July 21, 1989.

J. Burton Hunter, III, Buckhannon, for Rohr and Walton.

Terry D. Reed, Hymes and Coonts, Buckhannon, for Linger.

PER CURIAM:

■ This case is before the Court upon the appeal of Mattie Marie Rohr, her sister, Jean Walton, and their spouses, from the February 29, 1988 order[1] of the Circuit Court of Upshur County, denying the appellants' motion to set aside a prior order. The prior order found that the appellee, Clyde Linger, deeded the family homestead to his daughters, the appellants, with the mutual understanding that the appellants held title to the property subject to the appellee's right to reside in the homestead for the remainder of his life. The court further found that, although the appellants obtained a valid deed to the homestead, at the conclusion of the appellee's life, title to the homestead reverted to the estate of the appellee. While there was sufficient evidence in the record to establish that the parties understood that the daughters were taking the property subject to the father's right to live in the homestead during his lifetime, there is no evidence in the record to indicate that following the father's death the daughters were required to reconvey the property to the father's estate. Therefore, the order of the circuit court is affirmed, in part, and reversed, in part.

Appellee, Clyde Linger, is 96 years old. His daughter, appellant, Mattie Marie Rohr, resides in Ohio. His daughter, appellant, Jean Walton, resides in California.

In the mid–1980's the appellee's first wife, of 70 years, died. According to Linger, after his first wife died, he told his daughters he "wanted them to have everything that she had."

Shortly thereafter, on October 16, 1985, Linger executed a general power of attorney to his eldest daughter, appellant Rohr. He describes his daughter as his trusted "best friend." His daughter has never exercised her power of attorney nor has she filed it with the Circuit Clerk's office.

In June, 1986, Linger met Mrs. Freda Fultz at a senior citizens' center. The two became very close. Mrs. Fultz, thirty years Linger's junior, looked after Linger under a "buddy system" organized by the senior citizens' center.

In August, 1986, the appellee developed circulation problems in his legs. His treating physician performed surgery on the carotid artery in order to improve the circulatory problems. His physician stated that the appellee was originally disoriented for a few weeks after surgery, and that such disorientation after surgery was common for persons of advanced age. But the phy-

---

1. The petition for appeal is stamped as filed on October 20, 1988 by the office of the Circuit Clerk of Upshur County. The petition was properly filed in the circuit clerk's office nine days prior to the eight-month period in which petitions for appeals must be filed. However, the petition physically arrived in the Clerk of the Supreme Court's office on November 14, 1988, three weeks after the expiration of the appeal period. See W.Va.R.App.P. 3(a) and 4(a) and syl. pt. 2, First Nat'l Bank of Bluefield v. Clark, 181 W.Va. 494, 383 S.E.2d 298 (1989) for "good cause to suspend or enlarge the time within which a party may file a petition for appeal."

sician examined Linger on September 19, 1986, and found him oriented.

During the period of the appellee's illness, both daughters returned to the family homestead because their father was having difficulty ambulating. The daughter residing in California stayed for roughly two weeks in August, then returned to her home. However, appellant Rohr, of Ohio, stayed with her father from August, 1986, through October, 1986.

During this period, the relationship between Linger and Mrs. Fultz was blossoming. According to Mrs. Fultz, Linger was "begging" her to marry him. On September 7, 1986, she agreed to marry Linger, if he agreed to pay her $30 per day for the care she would provide him.

In early October, 1986, Linger and his daughter, Mrs. Rohr, went to Linger's bank for the purpose of adding his daughter's name to Linger's three certificates of deposit, each valued at $10,000, and Linger's checking account. A bank official advised him of the consequences of adding his daughter's name, and further advised him to see his lawyer. According to the bank official, Linger fully appreciated and understood the consequences of adding his daughter's name to the certificates and checking account. The following day Linger met with yet another bank official who again explained the consequences of adding the daughter's name to the account. The second bank official also found Linger to be fully aware of his actions. Linger then added his daughter's name to the certificates and the checking account. According to his daughter, she considers the money to belong to her father.

Later that day, Linger and his daughter went to the offices of Linger's lawyer of thirty years, W.T. O'Brien. According to the lawyer, Linger wanted to deed his home, valued at roughly $58,000, to his two daughters. The lawyer explained the consequences of the conveyance to Linger. The lawyer specifically recommended that Linger reserve a life estate in the homestead for himself. In his daughter's presence, Linger informed the lawyer that a life estate was not necessary because his

daughters would allow him to live in the homestead for the rest of his life. His daughter, appellant Rohr, subsequently stated at trial that it has never been the parties' intention to remove Linger from the homestead where he currently continues to reside.

The deed conveying the property, in fee simple, to the daughters was read to Linger "cover to cover" according to the attorney's secretary, who witnessed its execution and verified that Linger was alert and understood the transaction. The deed was recorded later that day.

A few weeks later, some women at the senior citizens' center were discussing the news that Linger deeded his homestead to his daughters. They asked Mrs. Fultz if she had been made aware of the transaction.

Mrs. Fultz, in turn, asked Linger if he had, in fact, conveyed the property to his daughters. He denied any recollection of the conveyance and continued to do so at trial.

Mrs. Fultz began living with Linger in the fall of 1986 and was being compensated for her services by Linger. On March 18, 1987, appellee Linger filed this action, alleging that both transactions (the deed and the certificates of deposit) were void because appellant Rohr, through undue influence and fraud, coerced her father to make the conveyances.

A trial was conducted before the circuit court in October, 1987. On January 11, 1988, the court issued its findings of fact and conclusions of law. Sometime between the trial and the court's decision, the court notes that the appellee and Mrs. Fultz were married.

Based on the evidence, the trial court found: "[t]here was no evidence offered on behalf of the Plaintiff to show that duress or fraud was used to procure the deed in question or the addition of the name of Mattie Marie Rohr to the Certificates of Deposit and the bank account." The court further found that based on the testimony of the physician (that the appellee was oriented in September, 1986) and the testimo-

ny of the bank officials and the lawyer's secretary, Linger was competent at the time of both transactions.[2] Therefore, the deed was valid.

However, based on the testimony of both the appellee, Linger, and his daughter, appellant Rohr, the trial judge found that although the deed validly conveyed the property in fee simple to the appellee's daughters, it was mutually understood at the time of the transaction that Linger could remain in the homestead for life. Therefore, the court ruled that a constructive trust was created wherein the daughters held the real property in trust for the father during his life. The court further concluded that upon the death of the appellee, legal title in the real property *would revert to the father's estate.* In essence, the order required the daughters, holders of an otherwise valid deed to the homestead, to hold the property in trust for the father during his lifetime, then reconvey the homestead to the estate of the father upon the father's death.

Similarly, the court concluded that any interest Mrs. Rohr had acquired in the certificates and checking account was purely for the purposes of caring for her father.

On appeal, the appellants, the daughters, do not contest the trial court's ruling con-cerning the certificates of deposit or the checking account.[3] Their sole assignment of error concerns the trial judge's ruling on the deed.

The deed conveyed the property to the daughters. The appellee alleged fraud and duress. Normally, once a trial judge finds that an otherwise valid deed was not procured by fraud or duress, the trial judge would, under other circumstances, be required to find the deed valid and the grantor would be left with no legal remedy.[4] Although the trial judge found that the deed was valid, since it was not procured under fraud or duress, contrary to the statute of frauds, *W. Va. Code,* 36–1–3 [1923],[5] he further concluded that the grantor retained an equitable interest in the homestead by oral agreement.

In fashioning the equitable remedy, the trial judge relied on *W. Va. Code,* 36–1–4 [1931] which reads, in pertinent part:

No declaration of trust of land shall be enforceable, unless it be made in writing, signed by the person who declares such trust or by his agent. If a conveyance of land, *not fraudulent,* is made to one in trust either for the grantor or a third person, such trust may be enforced, though it be not disclosed on the face of the conveyance, nor evidenced by a writ-

---

**2.** The trial court's rulings that the appellee was competent at the time of both transactions and that the appellee failed to prove duress or fraud are amply supported by the record and represent factual findings based on witness credibility. Therefore, the appellee's cross-assignments of error, that there was insufficient evidence to support the findings; and that a fiduciary relationship existed which the appellee breached through undue influence, are not meritorious. Syl. pts. 1 and 2, *Hardin v. Collins,* 125 W.Va. 81, 23 S.E.2d 916 (1942). *Accord, State Farm Auto Ins. Co. v. American Casualty Co.,* 150 W.Va. 435, 146 S.E.2d 842 (1966).

**3.** Court records indicate that, as of October, 1988, of the $30,000 contained in the certificates of deposit, $14,000 has already been spent, with the approval of the court. Roughly, $5,400 was spent toward air conditioning, carpeting and general refurbishing of the homestead and $8,600 was spent for legal fees associated with the trial of this action.

**4.** In syllabus point 1 of *Hardin v. Collins,* 125 W.Va. 81, 23 S.E.2d 916 (1942), the Court held: "A deed will not be set aside for incapacity of

the grantor, or for undue influence, misrepresentations, or fraud upon the part of the grantee, except upon a clear showing of one or more of these facts by the evidence."

In syllabus point 3 of *McElwain v. Wells,* 174 W.Va. 61, 322 S.E.2d 482 (1984), we held that: "A party challenging the validity of a deed because of inadequate consideration and grantor incompetence has the burden of proving those facts. Absent convincing proof, a trial court should find the challenged deed valid."

**5.** *W. Va. Code,* 36–1–3 [1923] reads:

No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence.

In syllabus point 2 of *Henderson v. Henrie,* 68 W.Va. 562, 71 S.E. 172 (1910), the Court held: "A contract for the sale of an equitable estate is within the statute of frauds."

ing: Provided, however, that trusts arising by construction or operation of law shall not be subject to the provisions of this section.

(emphasis added)

■ In syllabus point 2 of *Floyd v. Duffy,* 68 W.Va. 339, 69 S.E. 993 (1911), we noted that when the legislature adopted the above statute it was providing a narrow, equitable exception to the sometimes harsh results worked by the statute of frauds, *W.Va.Code,* 36–1–3 [1923].

> Though no contract for the sale of land is enforceable either at law or in equity, unless it be in writing, and no estate in land for more than five years can pass except by deed or will, there are many instances in which courts of equity except transactions, relating to land, from the operation of these provisions, on the ground that they stand upon equities independent of the contracts attending them, and establish constructive trusts in favor of grantors as well as persons not mentioned in the deed.

*Accord,* syl. pt. 3, *Henderson v. Henrie,* 68 W.Va. 562, 71 S.E. 172 (1910).

■ However, in syllabus point 1 of *Hoglund v. Curtis,* 134 W.Va. 735, 61 S.E.2d 642 (1950), we held that once an otherwise valid conveyance is established,[6] the mere equities of the situation will not cause the court, contrary to the statute of frauds, to alter the terms of the deed unless the grantor establishes through overwhelming parol evidence that both parties to the conveyance fully understood that the grantee was taking the property under certain conditions, and that both parties were fully aware of the conditions:

> By virtue of Code, 36–1–4, a conveyance of land, not fraudulent, may be made to

one in trust, either for the grantor or a third person, and such trust may be enforced in a court of equity, upon parol evidence, provided that such evidence 'is so clear as to leave no doubt that a trust was, in fact, created.' *Boggs v. Boggs,* 125 W.Va. 600, 608, 25 S.E.2d 631 [634 (1943)].

*Accord, Boggs v. Boggs,* 125 W.Va. 600, 608, 25 S.E.2d 631, 635 (1943):

> The establishment of a trust ... must necessarily challenge the written words of a solemn instrument, and in the instant proceeding written words of unequivocal meaning....
>
> From the evidence as detailed it is clear that the record abounds in conflicts of evidence on the material issue. If a trust of the character alleged by plaintiffs actually exists, it must necessarily have arisen at the time that the grantor delivered the instant deed to defendant. The record contains no testimony which shows any such understanding between the grantor and the grantee.

*See also Brennan v. Kemp,* 129 F.Supp. 753, 756 (S.D.W.Va.1955), where the court held that *W.Va.Code,* 36–1–4 is inapplicable when there is conflicting evidence as to what "the parties understood, agreed to, or expected."

■ Therefore, the trial court could properly find that Linger was entitled to the narrow exception to the statute of frauds contained in *Code,* 36–1–4 when it ruled that the daughters took title to the property with the understanding that they would hold it in trust for the benefit of their father during his lifetime. This part of the ruling is affirmed since the daughters were provided a valid deed and Linger proved to a degree of clarity beyond doubt that the daughters took the deed subject to

---

**6.** *W.Va.Code,* 36–1–4 applies only to a conveyance that appears valid on its face. In this case the trial court's findings support the conclusion that the appellee validly deeded legal title to the homestead to the daughters. Without such a finding, *Code,* 36–1–4, which is applicable to conveyances that are not fraudulent, may not be utilized. Legal title must validly pass from the grantor to the grantee, if not:

> [T]he right to create a trust by parol, as provided for in the enactment quoted above, [36–

1–4] does not exist. If there was any trust created, it must be based upon the agreement of the [grantee] that he would hold the land for the benefit of plaintiff; and we think necessarily, that [the agreement between the parties] was a declaration of trust [without a valid conveyance] and comes within the first sentence of the statute [*Code,* 36–1–4] ... requiring such a declaration to be in writing. *Dye v. Dye,* 128 W.Va. 754, 761, 39 S.E.2d 98, 102 (1946).

the mutual understanding that he remain living in the homestead for his lifetime, as both parties admit that this was their mutual understanding.

■ However, the trial court then ruled that upon Linger's death, legal title to the property reverts to Linger's estate. In order to reach this conclusion, Linger was required to establish that one of the terms of the constructive trust included an understanding between the parties that the daughters, holders of an otherwise valid title, took the title with the mutual understanding that there was an additional duty to reconvey legal title to Linger's estate.

This additional duty, to reconvey legal title to the estate, would also have to be clearly proven as a mutually understood condition of the oral trust in order to be excepted from the statute of frauds.

In two cases considered under *Code,* 36–1–4, the Court held that the evidence clearly established that the grantee took valid title with the understanding that the grantee would not only hold the property in trust, for the benefit of the grantor, but reconvey the property at a specified time, or perform some other additional duty. In *Hoglund v. Curtis,* 134 W.Va. 735, 61 S.E.2d 642 (1950), the grantor was insolvent and recently inducted into the military service during World War II. He deeded his home to the grantee in fee simple. The grantee, however, regularly paid rent to the insolvent grantor of an alleged fee simple deed for a number of years, even though the contract of sale purported to be for consideration. The grantor also supplied the grantee funds for securing the mortgage. We held that the grantor clearly established that he conveyed the property to be held in trust, with a duty to reconvey the property to the grantor when he returned from the service. Similarly, in *Floyd v. Duffy,* 68 W.Va. 339, 69 S.E. 993 (1911), the grantor became "financially embarrassed" and could not sell a large number of lots due to liens. The grantor conveyed the lots to the grantee for no consideration. The parties used the term "commissions" in the presence of third persons when the grantee was selling the lots to third persons. The grantor also continued to improve the property after the conveyance. We held that the grantor's estate clearly established that the lots were conveyed to the grantee in trust under *Code,* 36–1–4, and that the grantor's estate had clearly established that the purpose of the trust was for reselling the lots to third persons, whereby the grantee had the duty to split the profits with the grantor.

However, in *Brennan v. Kemp,* 129 F.Supp. 753 (S.D.W.Va.1955), applying West Virginia law, the court found that the proponent of a constructive trust under *Code,* 36–1–4 failed to clearly prove the terms and conditions of such a trust were understood by the parties at the time of the conveyance. In *Brennan,* an elderly man deeded his property to his daughter and reserved a life estate for himself. The daughter stated at the time of the conveyance that she would "take care" of her sister. *Brennan, supra,* 129 F.Supp. at 756. The daughter who held title to the property and the father subsequently sold the property. The father received a portion of the sale price equivalent to the value of a life estate. The other sister filed an action prior to the death of her father, alleging she was entitled to one-half of her sister's share in the proceeds of the sale under *Code,* 36–1–4. The ill father testified that there were no specific oral terms attached to the conveyance other than the daughter's statement that she would "take care" of her sister. The court reviewed our prior common law regarding the proof necessary to establish a valid oral trust in land and held that the sister was not entitled to the benefit of *Code,* 36–1–4 because "[t]he parol agreement relied upon must be certain and definite in its terms. The declaration of trust must be unequivocal and explicit and established by clear and convincing evidence." *Brennan, supra,* 129 F.Supp. at 757.

In this case there is an absolute paucity of evidence to support the trial court's conclusion that Linger deeded the property to his daughters, with the additional understanding that upon his death the daughters

were required to reconvey the property back to the estate.

Mr. Linger's actions and statements during the two days in October, when he visited his bank and his lawyer's office indicate that, in contemplation of marriage, he intended to assure that his daughters would have his home upon his death. There is absolutely no evidence to indicate that he had any other intention. Of equal importance, there is no evidence to suggest that the grantees understood that they took the deed with the additional duty to reconvey the property to their father's estate. Therefore, the January 11, 1988 order of the trial court is affirmed in all respects, except for that portion of the order that concluded that upon the death of the appellee the title to the homestead reverts to the appellee's estate. The appellants took valid title to the property, subject to the only proven understanding of the parties as to their obligations: that their father be allowed to live on the property for the remainder of his life. Once the appellants have fulfilled this obligation, the terms of the constructive trust have been fulfilled and the appellants will hold title, in fee, to the property.

Based on all the foregoing, the January 11, 1988 decision of the Circuit Court of Upshur County is affirmed, in part, and reversed, in part.

Affirmed, in part; reversed, in part.