591 S.E.2d 767

**Helen C. PROUDFOOT, Individually and as Trustee of the Helen C. Proudfoot Trust, Plaintiff Below, Appellant**

v.

**William D. PROUDFOOT, Defendant Below, Appellee**

No. 31278.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 5, 2003.

Decided Dec. 4, 2003.

H. Gerard Kelley, Esq., Catherine A. McGuire, Esq., Kelley Legal Services, PLLC, Philippi, West Virginia, Attorneys for Appellant.

David H. Wilmoth, Esq., Elkins, West Virginia, Attorney for Appellee.

MAYNARD, Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Randolph County entered on July 19, 2002. Pursuant to that order, the circuit court granted summary judgment in favor of the appellee and defendant below, William D. Proudfoot, in this action filed by Helen C. Proudfoot, individually, and as Trustee of the Helen C. Proudfoot Trust. Helen[1] filed suit seeking to set aside a deed which conveyed property from the trust to William. The circuit court determined that the deed was valid.

In this appeal, the appellant, Billie Louise Proudfoot, who is now Successor Trustee of the Helen C. Proudfoot Trust,[2] argues that genuine issues of material fact exist regarding the circumstances under which the conveyance was made, and therefore, the circuit court erred by granting summary judgment to William. Billie also contends that the deed is invalid as a matter of law because it makes no reference to the trust. She maintains that Helen did not have the authority to convey the subject property. This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

## I.

## FACTS

On May 10, 1991, following the death of her husband, Helen Proudfoot became the sole owner of 74.50 acres of real property located in the Leadsville District of Randolph County, West Virginia. On January 11, 1994, after making several specific conveyances of portions of the real estate to her children, Helen conveyed the remaining residue of the

---

1. For clarification and ease of reading, we will hereinafter refer to the parties by their first name only since they have the same last name.

2. Sometime after the complaint was filed, Helen became incapacitated as a result of the onset of Alzheimer's disease and was no longer able to serve as Trustee. Billie, one of Helen's daughters, was named as Successor Trustee pursuant to a provision in the trust. She filed this appeal on behalf of the trust and Helen.

property, which consisted of 4.8 acres and included the family home, to the Helen C. Proudfoot Trust. Helen had created the trust on October 8, 1993, by executing an inter vivos trust agreement. Helen was named as the Trustee and primary beneficiary. Her six children were designated remainder beneficiaries. Helen has five daughters and one son, William, the appellee.

The trust agreement provides that upon the death of Helen, the trust property must be allocated to the remainder beneficiaries as outlined therein. In that regard, the trust agreement states that the residue of the Proudfoot farm shall go to Helen's five daughters and that "the same cannot be sold for two (2) years after [her] death unless all of [her] daughters then living agree to sell." In the event the property is sold, the trust requires that William be given the right of first refusal to purchase the land. The trust also states that prior to the sale, any one or more of Helen's daughters can live in the house.

In November 1997, William allegedly approached Helen and requested that she grant him a right-of-way across the 4.8 acre tract of land for the purpose of moving cattle from one parcel owned by him to another. On November 19, 1997, William allegedly presented a deed to Helen which he had prepared, indicating that it conveyed the right-of-way they had previously discussed. It is undisputed that Helen signed the deed.

On May 17, 1999, Helen discovered that instead of a mere right-of-way, the deed she executed and delivered to William actually conveyed to him fee-simple title to 4.3 acres of the 4.8 acres of land owned by the trust. Specifically, the deed states that for the sum of $1000.00, the grantor conveys "all of her rights, title and interest" in said property to the grantee, reserving to herself an "existing road right-of-way." The deed identifies the grantor as "Helen C. Proudfoot, widow" and the grantee as "William Dale Proudfoot." The deed also indicates that the conveyance is from "mother to son." The .5 acre tract on which the family home is located was reserved and excluded from the conveyance.

Upon learning the true content of the deed, Helen demanded that William consent to reformation or recision of the conveyance. He refused.[3] Helen then filed this civil action on October 18, 2000, in the Circuit Court of Randolph County, individually, and in her capacity as Trustee of the Helen C. Proudfoot Trust. She alleged William fraudulently obtained title to the subject real estate, and she sought to have the deed set aside. In addition, she asserted that the deed did not identify her as "Trustee" of said property and therefore, the conveyance was invalid. Subsequently, Helen voluntarily dismissed with prejudice her allegation of fraud.

On August 13, 2001, Helen filed a motion for summary judgment arguing that, as a matter of law, the conveyance of the trust property by her as an individual was outside the terms and authority of the trust agreement and, therefore, was invalid. The motion was denied on March 21, 2002. A few days later, William filed a motion for summary judgment alleging that the deed at issue was valid even though it made no reference to the trust. The circuit court agreed, finding that Helen had reserved the right to withdraw property from the trust. Accordingly, on April 11, 2002, the court granted William's motion for summary judgment. Thereafter, Helen filed a motion for reconsideration which was denied on July 19, 2002. This appeal followed.

## II.

## STANDARD OF REVIEW

■ Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be

---

**3.** William has continuously maintained that Helen knew the content of the deed at issue and intended to sell him the property and not just a right-of-way.

tried and inquiry concerning the facts is not desirable to clarify the application of the law." This court applies a *de novo* standard of review to a circuit court's entry of summary judgment. *See* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*").

### III.

### DISCUSSION

Billie, now acting on behalf of Helen and the trust,[4] first contends that the circuit court erred by granting summary judgment because there were genuine issues of material fact that should have been presented to a jury. In that regard, Billie says that a jury should determine whether both Helen and William believed that the deed at issue was only conveying a right-of-way across the property or whether only Helen had such a belief based on representations made to her by William. Billie argues that if either a mutual mistake or unilateral mistake of fact occurred with respect to the content of the deed, then the conveyance is voidable.

In response, William argues that this Court should reject this assignment of error because neither Helen nor Billie claimed that there had been a mutual mistake or unilateral mistake of fact with respect to the deed during the proceedings before the circuit court. In other words, William says that Billie cannot raise this issue for the first time on appeal. We agree.

 Historically, this Court has refused to consider matters not first presented to the trial court. We have stated, "Our law is clear in holding that, as a general rule, we will not pass upon an issue raised for the first time on appeal." *Mayhew v. Mayhew,* 205 W.Va. 490, 506, 519 S.E.2d 188, 204 (1999). In Syllabus Point 2 of *State v. Bosley,* 159 W.Va. 67, 218 S.E.2d 894 (1975), this Court explained that "[t]he appellate review of a ruling of a circuit court is limited to the very record there made and will not take into consideration any matter which is not a part of that record." Also, we have held that,

" ' "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958).' Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985)." Syllabus Point 2, *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987).

 In reviewing the record in this case, we find no instance where Helen or Billie argued to the trial court that either a mutual mistake or unilateral mistake of fact had occurred. Billie argues that a claim of mistake was raised by Helen in the complaint. We must disagree. While Helen asserted in the complaint that William advised her that the deed was only conveying a right-of-way, she made this claim in the context of her fraud allegation. Helen later dismissed the fraud allegation with prejudice.

There is simply no discussion of any possible mutual mistake or unilateral mistake by the parties in any of the hearings in this case which have been documented by transcripts and made a part of the record. In fact, during a hearing, on November 8, 2001, trial counsel for Helen advised the circuit court that, "I think this matter would be resolved by Summary Judgement one (1) way or the other—I don't think it's necessarily a question of fact … I think it's a question of law." Thus, it is clear that neither Helen nor Billie raised the issue of mutual or unilateral mistake of fact before the circuit court. Accordingly, we decline to address the issue in this appeal.

Billie next argues that the deed is invalid as a matter of law because it makes no reference to the trust, nor identifies Helen as Trustee of the property. Billie maintains that Helen was not able to convey the property to William in her individual capacity because the property was owned by the trust. Therefore, she concludes that the circuit court erred by granting William's motion for summary judgment instead of the motion filed by Helen. In response, William asserts

---

**4.** *See* note 2, *supra.*

that the trust expressly authorizes Helen, as the Grantor, to remove property from the trust, and therefore, the deed is valid.

 Consequently, the validity of the conveyance at issue depends upon the provisions of the trust. This Court has stated that "[t]he paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Hemphill v. Aukamp*, 164 W.Va. 368, 264 S.E.2d 163 (1980). "In ascertaining the intent of the settlor, the entire trust document should be considered." Syllabus Point 2, *Hemphill*.

As set forth above, the Helen C. Proudfoot Trust was created on October 8, 1993, between "HELEN C. PROUDFOOT, ... as the 'Grantor,' and HELEN C. PROUDFOOT, ... 'Trustee.'" The trust instrument provides, *inter alia*, that,

It is the Grantor's intention except as otherwise provided in this Trust Agreement, to confer upon Trustee the broadest and fullest power and authority with respect to each trust created herein which an individual can possibly exercise over his property and Trustee shall exercise such powers and authority in Trustee's sole discretion, in such manner, and to such extent, as Trustee shall deem advisable.

The trust further enumerates those powers given to the Trustee to include the authority "[t]o take, purchase, hold, manage, convert, sell, assign, alter, invest, reinvest and otherwise deal with the same, including any real estate therein[.]" The trust also contains a section entitled, "GRANTOR'S POWERS," which states,

The Grantor expressly reserves the following powers:

(1) To add property to the Trust.

(2) To amend and alter this Trust in any way and to change the beneficiaries, their respective shares, and the plan of distribution.

(3) To withdraw any part of the trust estate upon reasonable notice to the Trustee in writing.

(4) To revoke or terminate this Trust in its entirety by an instrument in writing filed with the Trustee.

(5) To change the Trustee or successor Trustee at any time without revoking this Trust.

 The *Restatement (Third) of Trusts* § 63 (2003) provides, and we hereby so hold, that, "The settlor of an inter vivos trust has power to revoke or modify the trust to the extent the terms of the trust so provide." Based upon the express provisions of this trust set forth above, we believe that Helen intended to be able to dispose of her property as she so desired. To that end, she created a flexible trust wherein she retained the right and power as the Grantor to add or withdraw property from the trust in any manner she chose and at anytime. In fact, Helen heretofore exercised those powers and has amended the trust on three separate prior occasions. Therefore, in accordance with the general rule that the settlor's intent should prevail given the express powers she retained over the trust, we must find that Helen had the power and authority as the Grantor of the trust to convey the parcel of land at issue in this case to William.

 We further find that the deed executed by Helen on November 19, 1997, was a valid conveyance of the 4.3 acres of land at issue to William. "[A]s a general rule ... fraud, duress or undue influence will invalidate a deed." 5C Michie's Jurisprudence *Deeds* § 53 (1998). However, "[a] deed will not be set aside for incapacity of the grantor, or for undue influence, misrepresentations or fraud upon the part of the grantee, except upon a clear showing of one or more of these facts by the evidence." *Id.* As we explained in *Linger v. Rohr*, 181 W.Va. 643, 646, 383 S.E.2d 825, 828 (1989), "once a trial judge finds that an otherwise valid deed was not procured by fraud or duress, the trial judge [is] ... required to find the deed valid and the grantor [will] be left with no legal remedy."[5]

---

5. Also, in *Linger*, this Court noted that "once an otherwise valid conveyance is established, the mere equities of the situation will not cause the court, contrary to the statute of frauds, to alter the terms of the deed unless the grantor establishes through overwhelming parol evidence that

Moreover, it also well established, and we, therefore, now hold that,

A deed must be upheld if possible. All instruments must be so construed as to pass an estate, when such was the intention; and it will be presumed from the making of a deed that the grantor intended to convey some property by it.

5C Michie's Jurisprudence *Deeds* § 73 (1998). Consistent therewith, this Court held in Syllabus Point 1 of *G & W Auto Center, Inc. v. Yoursco,* 167 W.Va. 648, 280 S.E.2d 327 (1981), that, " 'A deed conveying lands, unless an exception is made therein, conveys all the estate, right, title and interest whatever, both at law and in equity, of the grantor in and to such lands.' Syllabus Point 1, *Freudenberger Oil Co. v. Simmons,* 79 W.Va. 46, 90 S.E. 815 (1916)." Accordingly, we must conclude that the deed at issue here which, by its terms conveyed the 4.3 acre tract to William in fee simple, effected a valid conveyance of Helen's entire interest in the property.

We are compelled to reject Billie's argument that "[t]he deed conveying this property to William D. Proudfoot defeated the provision and intent that this property go to the five daughters." As set forth above, the half-acre of land upon which the family home is located was excluded from this conveyance. Moreover, the trust only provides that the "residue of the Proudfoot farm" be transferred to Helen's daughters upon her death. As previously discussed, Helen clearly contemplated adding and withdrawing property from the trust during her lifetime.

Finally, we note that at first blush the result here might seem harsh to the casual reader. After all, in this case we have a son who refused to cede to his mother property the mother now claims was improperly conveyed and is not really his. Indeed, it is very attractive and it would be very easy to lapse into a faulty analysis of the law of this case, and reach a bad result, if one only considered this case in family terms on its own facts. But consider when analyzing this case what the rule should be if the mother, instead of selling this property to her son, sold the property to a total stranger. What rule should apply in that case? Would you say let her set aside her deed because she made a mistake? Or would you say she lacked power to convey the property under the terms of the trust? Well, of course you would do neither. And the law of this case, outlined carefully herein, must apply equally and identically to either set of facts. We simply cannot have one rule of law for mothers and sons and an opposite rule for strangers. The applicable law of trusts and deeds requires us to affirm this conveyance.

## IV.

## CONCLUSION

Accordingly, for reasons set forth above, the final order of the Circuit Court of Randolph County entered on July 19, 2002, is affirmed.

Affirmed.

both parties to the conveyance fully understood that the grantee was taking the property under certain conditions, and that both parties were fully aware of the conditions[.]" 181 W.Va. at 647, 383 S.E.2d at 829, *citing Hoglund v. Curtis,* 134 W.Va. 735, 61 S.E.2d 642 (1950) (footnote omitted). As previously noted, the allegations of fraud in this case were voluntarily dismissed with prejudice and no question of mistake of fact was raised below.